The STATE of Ohio, Appellee,

v.

SZEFCYK, Appellant.

[Cite as *State v. Szefcyk* (1995), 104 Ohio App.3d 118.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005928.

Decided May 24, 1995.

*Jonathan Rosenbaum,* Lorain County Assistant Prosecuting Attorney, for appellee.

*Jack Bradley,* for appellant.

---

BAIRD, Presiding Judge.

This cause comes before this court upon the appeal of Walter Szefcyk ("defendant") from the judgment of the Lorain County Court of Common Pleas denying postconviction relief to defendant. We reverse in part and affirm in part.

Defendant, while driving a truck, hit and killed a person riding a bicycle. Defendant was tried to a jury which found him guilty of involuntary manslaughter, in violation of R.C. 2903.04(B), an aggravated third degree felony, vehicular homicide, in violation of R.C. 2903.07, a first degree misdemeanor, and leaving the

scene of an accident, in violation of R.C. 4549.02, a first degree misdemeanor. Defendant was also found guilty of three minor misdemeanors, including (1) reckless operation, in violation of R.C. 4511.20; (2) failure to drive within an assured clear distance, in violation of R.C. 4511.21(A); and (3) improper passing, in violation of R.C. 4511.27(A). The involuntary manslaughter conviction was predicated upon the minor misdemeanor convictions.

Defendant brought a timely appeal on the merits, arguing that, pursuant to R.C. 2903.04(B), a conviction of involuntary manslaughter cannot be predicated upon a minor misdemeanor.[1] This court affirmed defendant's conviction. *State v. Szefcyk* (Jan. 6, 1993), Lorain App. No. 92CA005340, unreported, 1993 WL 6658. Defendant appealed to the Supreme Court of Ohio, which declined to hear the appeal. *State v. Szefcyk* (1993), 66 Ohio St.3d 1489, 612 N.E.2d 1245.

The Ohio Supreme Court, however, subsequently decided a case involving the same legal question. In *State v. Collins* (1993), 67 Ohio St.3d 115, 616 N.E.2d 224, the defendant was convicted of involuntary manslaughter based upon his failure to stop at a stop sign, a minor misdemeanor. The Court of Appeals for Miami County reversed his conviction, and the Ohio Supreme Court affirmed the appellate court's decision, holding that "[a] minor misdemeanor may not serve as the underlying predicate offense for purposes of the involuntary manslaughter statute, R.C. 2903.04(B)." *Id.* at syllabus.[2]

Relying on *Collins,* defendant challenged his involuntary manslaughter conviction by filing a petition in the trial court for postconviction relief, pursuant to R.C. 2953.21.[3] The trial court denied defendant's petition without explanation. Defendant appeals, asserting two assignments of error.

"Assignment of Error No. One

"The trial court erred by allowing a minor misdemeanor to support a conviction of involuntary manslaughter."

---

**1.** At the time of defendant's conviction, R.C. 2903.04(B) stated: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

**2.** After *Collins,* the Ohio General Assembly, on September 29, 1994, amended R.C. 2903.04(B) as follows:

"No person shall cause the death ,of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree, *or a minor misdemeanor.*" (Emphasis added.)

Because this amendment occurred after defendant's conviction, it is inapplicable to this appeal.

**3.** Defendant also petitioned the trial court for reinstatement of his previously revoked driving privileges. This issue will be addressed under Defendant's second assignment of error, *infra.*

Defendant argues that his petition for postconviction relief concerning his involuntary manslaughter conviction should have been granted based upon the Ohio Supreme Court's decision in *Collins* and this court's decision in *State v. Zanders* (Apr. 6, 1994), Summit App. No. 16166, unreported, 1994 WL 119019. In *Zanders,* this court relied on *Collins* to hold that a minor misdemeanor could not support a conviction for involuntary manslaughter. *Id.* at 2.

In response, the state argues that the denial of defendant's petition for postconviction relief was proper for two reasons: (1) this court lacks proper jurisdiction to review defendant's appeal on the basis of *res judicata;* and (2) defendant was found to have acted recklessly.

Although the state's first contention arguably may have been valid at the time it submitted its brief, the Ohio Supreme Court's decision in *State v. Westfall* (1995), 71 Ohio St.3d 565, 645 N.E.2d 730, precludes this court from applying *res judicata* to affirm the denial of defendant's petition for postconviction relief.

In *Westfall,* the defendant, Derwin Westfall, was convicted of involuntary manslaughter predicated upon conviction of a minor misdemeanor. On direct appeal from the conviction, this court rejected Westfall's contention that a minor misdemeanor cannot predicate a conviction of involuntary manslaughter. *State v. Westfall* (July 31, 1991), Summit App. No. 14930, unreported, 1991 WL 149573. However, based on the Ohio Supreme Court's holding in *Collins,* the trial court granted postconviction relief to Westfall. The state appealed the trial court's decision, and we reversed, stating that "[a]s a result [of *res judicata* ], Mr. Westfall is barred from asserting, in a petition for postconviction relief, an argument which was fully and finally litigated." *State v. Westfall* (Sept. 28, 1994), Summit App. No 16663, unreported, at 5, 1994 WL 527883. However, relying on *Collins,* the Ohio Supreme Court reversed this court's application of *res judicata* and reinstated the trial court's grant of postconviction relief. *State v. Westfall* (1995), 71 Ohio St.3d 565, 645 N.E.2d 730.[4]

The state's second argument asserts that because defendant was found to have acted recklessly,[5] *Collins* does not apply. In *Collins,* the defendant was convicted of involuntary manslaughter predicated upon his underlying conviction for failure to stop at a clearly marked stop sign, in violation of R.C. 4511.43, a strict liability minor misdemeanor.

---

4. No opinion was issued in this case.

5. Defendant was convicted of reckless operation, in violation of R.C. 4511.20, which states: "No person shall operate a vehicle * * * on any street or highway *in willful or wanton disregard* of the safety of persons or property." (Emphasis added.)

As the state in this case argues, the Ohio Supreme Court in *Collins* relied on the "well-reasoned" dissents of Judge Cacioppo in *State v. Montecalvo* (Sept. 5, 1990), Lorain App. No. 89CA004653, unreported, at 7–18, 1990 WL 129245, and *State v. Westfall* (July 31, 1991), Summit App. No. 14930, unreported, at 5–15, 1991 WL 149573. In both *Montecalvo* and *Westfall,* Judge Cacioppo dissented from the majority's holdings that a minor misdemeanor can serve as a predicate to a conviction for involuntary manslaughter. In both cases, however, Judge Cacioppo clearly distinguished between strict liability minor misdemeanors and those committed recklessly, or with a "culpable mental state." See *Montecalvo* at 14 (Cacioppo, J., dissenting); *Westfall* at 10 (Cacioppo, J., dissenting).[6] This distinction was further evidenced in Judge Cacioppo's separate *concurring* opinion in the first appeal in this case, in which she stated:

"I concur in the judgment reached by the court but write separately to clarify an important point. In the case at bar, the jury found that appellant acted recklessly [convicting Defendant of reckless operation]. As a result, I agree that appellant was properly found guilty of involuntary manslaughter. However, I continue to believe that a conviction for involuntary manslaughter cannot be based on a minor misdemeanor." *State v. Szefcyk* (Jan. 6, 1993), Lorain App. No. 92CA005340, unreported, at 6, 1993 WL 6658.

■ Regardless of whether we would agree with the state's second argument addressing the culpability issue, this court is bound by the Ohio Supreme Court's clear directive in *State v. Collins, supra.* An appellate court may not disregard a clear and unambiguous directive from the Supreme Court of Ohio expressed in the syllabus of an opinion. *Smith v. Klem* (1983), 6 Ohio St.3d 16, 18, 6 OBR 13, 15, 450 N.E.2d 1171, 1173.

■ The syllabus of *Collins,* 67 Ohio St.3d 115, 616 N.E.2d 224, clearly states that "[a] minor misdemeanor may not serve as the underlying predicate offense for purposes of the involuntary manslaughter statute[.]" Accordingly, despite the fact that defendant was convicted of reckless operation in violation of R.C. 4511.20, a statute requiring a culpable mental state, defendant's first assignment of error is sustained.

"Assignment of Error Number Two

"The trial court erred when it denied defendant's motion to reinstate driving privileges."

---

6. In *Montecalvo,* Judge Cacioppo urged the Ohio General Assembly to amend the involuntary manslaughter statute to include a "threshold requirement that states that certain conduct must have a culpable mental state of criminal negligence or a wanton or reckless mens rea." *Id.* at 14 (Cacioppo, J., dissenting).

While defendant's second assignment of error challenges the trial court's denial of his postconviction motion to reinstate his driving privileges, defendant offers no legal authority to support his argument. He instead offers support for his contention that the trial court did indeed have jurisdiction to consider his motion. That issue, however, is not before this court.

■ With respect to whether the trial court erred in denying the motion, defendant correctly asserts that the trial court "maintains control over the suspension or revocation * * * [of a driver's license] so long as the suspension or revocation is in effect." *Cincinnati v. Phelps* (M.C.1961), 85 Ohio Law Abs. 602, 604, 175 N.E.2d 778, 780. Defendant also correctly contends that "there are circumstances under which a person may apply for a new license following revocation, thus implying all revocations may not be permanent[.]" *State v. White* (1987), 29 Ohio St.3d 39, 41, 29 OBR 388, 390, 505 N.E.2d 632, 634.

With respect to the reasons for reinstating defendant's driving privileges, defendant's sole argument is that "[h]e has accepted responsibility for his past actions and has moved his life in a positive direction." Defendant asserts that his circumstances are the same as those "that may warrant reinstatement of driving privileges that the court spoke of in both *Phelps* and *White.*"

"No part of Ohio's motor vehicle law requires a trial court to reinstate previously revoked driving privileges." *State v. Marinik* (Sept. 21, 1994), Lorain App. No. 5719, unreported, at 2, 1994 WL 510564. The Ohio General Assembly "left to the discretion of the trial [court] judge the length of time for a license suspension under R.C. 4507.16(A) * * * and further granted the trial court judge the discretion to revoke the license." *White*, 29 Ohio St.3d at 40, 29 OBR at 390, 505 N.E.2d at 634.

Defendant was convicted of, *inter alia*, leaving the scene of an accident. The trial court, pursuant to R.C. 4507.16(A)(3),[7] suspended defendant's driver's license for three years, commencing after his release from prison. Accordingly, the trial court's decision not to reinstate defendant's previously revoked driving privileges was not error. Defendant's second assignment of error is overruled.

The judgment of the trial court denying defendant's motion to reinstate his driving privileges is affirmed. Its judgment concerning defendant's involuntary

---

7. R.C. 4507.16(A)(3) provides that:

"The trial judge * * * shall suspend for not less than thirty days nor more than three years or revoke the driver's or commercial driver's license * * * of any person who is convicted of or pleads guilty to * * * [f]ailing to stop and disclose identity at the scene of the accident when required by law or ordinance to do so[.]"

manslaughter conviction is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

REECE, J., concurs.

SLABY, J., concurs separately.

SLABY, Judge, concurring.

I concur in the judgment reached by the court, but write separately to express my concern with the result of this decision and future decisions involving R.C. 2903.04(B). Walter Szefcyk was found to have caused the death of Philip Lichtscien—a sixty-six-year-old husband, father, and grandfather—as a direct result of recklessly operating his vehicle, a minor misdemeanor.

Relying on the Supreme Court of Ohio's "clear and unambiguous directive" in the syllabus of *State v. Collins* (1993), 67 Ohio St.3d 115, 616 N.E.2d 224, the court today reaches the only result permitted by law. Although our decision may be proper in terms of the black letter law, it is by no means proper in terms of justice. While I am aware that inequities occur all too often in our legal system, it is critical that they be carefully scrutinized to prevent them from recurring.

Our criminal justice system requires a necessary criminal intent, *mens rea,* before a person may be found guilty of a criminal offense. The exceptions to this doctrine are strict liability offenses, such as traffic violations. The court in *Collins* recognized that the General Assembly felt some traffic offenses were more serious and, therefore, should be punished more harshly. *Id.* at 117, 616 N.E.2d at 225. The court appears to have heavily relied on the logic of Judge Cacioppo's dissenting opinion in *State v. Montecalvo* (Sept. 5, 1990), Lorain App. No. 89CA004653, unreported, 1990 WL 129245, in which she stated that there is no reason for inflicting manslaughter punishment on one who unintentionally kills another simply because he committed a traffic violation. See *Collins,* 67 Ohio St.3d at 117, 616 N.E.2d at 225, quoting *Montecalvo,* unreported, at 13–14 (Cacioppo, J., dissenting). Judge Cacioppo also stated that "[i]f the bad result which happens is actually intended, or if it is recklessly produced (especially by one conscious of the risk), it does not seem too harsh to make the severity of his punishment dependent somewhat on the actual result, however accidental." *Id.* at 10, quoting LaFave & Scott, Criminal Law (2 Ed.1986) 683, Section 7.13.

The court concluded that a strict liability traffic offense should not give rise to involuntary manslaughter. *Collins,* 67 Ohio St.3d at 117, 616 N.E.2d at 225. Involuntary manslaughter ordinarily requires, at a minimum, a reckless *mens*

*rea.* Unfortunately, in my view, the court lumped all minor misdemeanors together without analyzing the *mens rea* required for each of the minor misdemeanor offenses. In particular, the court's broad syllabus language precluded the use of reckless operation, which requires proof of a reckless *mens rea,* as a predicate offense for involuntary manslaughter.

The General Assembly reacted by amending R.C. 2903.04(B) to include all minor misdemeanors. Although the amended version of the statute was not involved in this appeal, I feel compelled to express my concern over the effect of the amendment. The amendment is again inconsistent with our criminal justice system, which punishes those who possess a higher degree of criminal culpability with more severe punishment.

The General Assembly has now effectively abolished the use of R.C. 2903.07, the vehicular homicide statute. Strict liability offenses now give rise to potential punishment for a third degree felony, which carries a punishment of three to ten years, under the amended involuntary manslaughter statute. There appears to be no reason for the state to choose to charge a vehicular homicide offense, which requires proof of *mens rea,* when, under the same fact pattern, it could charge involuntary manslaughter, which does not require proof of any *mens rea* if based upon a strict liability offense.

I believe the proper analysis would look not only at whether the defendant had committed a minor misdemeanor, but also at whether the defendant acted with a culpable mental state. By looking at both factors, we would be able to distinguish cases such as *Collins* and *Montecalvo,* in which the defendants acted with no culpability, from the case *sub judice,* in which the defendant acted recklessly. Accordingly, I would urge the General Assembly to carefully reconsider its recent revisions to R.C. 2903.04(B) and amend the statute to require a finding of culpability before convicting a defendant of involuntary manslaughter based on a minor misdemeanor.