The STATE of Ohio, Appellant,

v.

ROWE, Appellee.

[Cite as *State v. Rowe* (1997), 118 Ohio App.3d 121.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17954.

Decided Feb. 5, 1997.

*Philip D. Bogdanoff,* Assistant Summit County Prosecuting Attorney, for appellant.

*Edwin C. Pierce,* for appellee.

BAIRD, Judge.

The state of Ohio presents this appeal from the decision rendered in the Summit County Court of Common Pleas that restored appellee's driving privileges. We reverse.

On December 15, 1986, appellee pled guilty to, and was convicted of, one count of aggravated trafficking in drugs, one count of trafficking in marijuana, one count of driving while intoxicated, and one count of aggravated vehicular homicide in violation of R.C. 2903.06(B) with the specifications that he had (1) caused physical harm to another and (2) been under the influence of alcohol and a drug of abuse at the time of the offense. Appellee served six years and one month in prison. As part of his sentence, his driving privileges were permanently revoked.

On April 4, 1996, appellee petitioned the trial court for a restoration of his driving privileges.[1] After conducting a hearing on the matter, the court, over the state's objection, granted appellee's motion and restored his driving privileges on June 10, 1996. The state then requested, and this court granted, leave to appeal. A single assignment of error is advanced:

"The trial court erred when restoring defendant's driving privileges after the defendant was convicted of aggravated vehicular homicide and his driving privileges have been permanently revoked."

---

1. Appellee had previously filed a petition seeking the same relief on February 25, 1993. That petition was denied by the trial court.

The state advances four separate arguments in support of its contention. However, there are essentially three distinct issues: (1) whether the trial court has inherent authority to act as it did, (2) whether the statute explicitly authorizes the trial court's act, and (3) whether the statute can be said to impliedly authorize such an act, based upon the logical interpretation of its terms.

■ The state contends that the trial court was without jurisdiction to consider, let alone grant, appellee's motion for the restoration of his driving privileges. We first consider whether the trial court possessed the inherent authority to modify appellee's sentence.

Appellee's license revocation was imposed as part of his criminal sentence pursuant to R.C. 2903.06(B), which requires that where, as in appellee's case, the offender was under the influence of alcohol or drugs, or both, at the time of the incident, "then the offender's driver's * * * privilege shall be permanently revoked pursuant to section 4507.16 of the Revised Code." R.C. 4507.16(D)(1) mandates:

"The trial judge of any court of record, in addition to or independent of all other penalties provided by law or ordinance, shall permanently revoke the driver's license * * * of any person who is convicted of or pleads guilty to * * * a violation of section 2903.06 * * * if the jury or judge as trier of fact in the case in which the person is convicted finds that the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, at the time of the commission of the offense."[2]

■ Ohio trial courts do not possess the inherent authority to suspend,[3] cancel,[4] or modify[5] a criminal sentence once that sentence has been executed, absent specific statutory authority to do so.[6] Appellee does not cite, nor can we

---

2. At the time of appellee's conviction, this section of the Revised Code was labeled as section 4507.16(C)(1); it was relabeled when an additional provision was inserted into the statute as subsection (C) in 1993. The text of the statute, however, has not otherwise materially changed. In its reply brief, the state urges this court to correct alleged mislabeling by the legislature. Inasmuch as the labeling of the particular subsection has no effect on the statutory mandate, since only "R.C. 4507.16," and not a specific subsection thereof, is referred to in R.C. 2903.06, we decline the state's invitation.

3. *State v. Smith* (1989), 42 Ohio St.3d 60, 61, 537 N.E.2d 198, 200–201; *State v. Cravens* (1988), 42 Ohio App.3d 69, 71–72, 536 N.E.2d 686, 688–690.

4. *Lakewood v. Davies* (1987), 35 Ohio App.3d 107, 108, 519 N.E.2d 860, 861–862.

5. *State v. Addison* (1987), 40 Ohio App.3d 7, 8–9, 530 N.E.2d 1335, 1336–1338.

6. We note that both parties herein consistently refer to the action by the trial court as a "suspension" of appellee's sentence of revocation. However, that term was not employed by the trial court, and does not appear to adequately describe the action taken, as no part of

locate, any portion of the Revised Code authorizing a trial court to modify the sentence imposed pursuant to R.C. 2903.06(B) once that sentence has been executed.[7] Thus, since there exists no inherent authority for such measures, absent specific statutory provision to the contrary, the trial court did not possess the authority to take any further action regarding the permanent revocation of appellee's driver's license. It is also evident, from the foregoing analysis, that the statute does not explicitly authorize the trial court's action.

Appellee contends that the court is empowered to suspend any part of a criminal sentence in the absence of a specific prohibition from the legislature. He relies on *State v. Air Clean Damper Co.* (1990), 63 Ohio App.3d 656, 661, 579 N.E.2d 763, 766–767, and *State v. Szefcyk* (1995), 104 Ohio App.3d 118, 123, 661 N.E.2d 233, 235–236, in support of his contention. Appellee's argument, however, misconstrues the holdings in those decisions. We find neither case applicable to this appeal.

In *Damper,* the court held that where the statute (R.C. 3734.99) appears to impose a mandatory fine but does not explicitly prohibit suspension thereof, and another statute (R.C. 2929.51[F]) generally authorizes a court to suspend all or part of a fine, the court is authorized to suspend or modify the fine. We note that, in the instant case, the issue is not the imposition of a fine, but a permanent revocation of a driver's license; there is no statute generally authorizing the suspension of such permanent revocations, unlike the statute authorizing the suspension of fines cited in *Damper;* and the statute at issue here not only contains the mandatory "shall" command but also contains the modifier "permanently," conditions not present in the statute cited in *Damper.* Essentially, the *Damper* court considered whether a trial court could suspend a mandatory fine; the case *sub judice* involves questions regarding whether a trial court can "suspend" a mandatory permanent revocation of a driver's license. Thus, *Damper* does not support appellee's claims.

appellee's sentence remained, nor were any terms or conditions placed upon the restoration of his driving privileges. However, inasmuch as the same rationale applies whether the trial court's decision is termed a "suspension," "modification," or "cancellation," we find the distinction to be immaterial for purposes of our analysis herein.

7. Various provisions of R.C. 4507.16 provide the trial court with discretion to suspend or modify the sentence imposed pursuant to various sections of that statute, including sentences involving suspension or revocation of a driver's license. See, *e.g.,* R.C. 4507.16(E) *et seq.; State v. White* (1987), 29 Ohio St.3d 39, 40–41, 29 OBR 388, 389–391, 505 N.E.2d 632, 633–634. However, none of those provisions pertain to the permanent revocation mandated by R.C. 4507.16(D)(1). R.C. 2929.51 provides the trial court with the authority to suspend or modify certain sentences but, in each case, requires that suspension or modification to occur *prior* to the date on which the offender begins to serve his sentence. That is clearly not the case here.

In *State v. Szefcyk*, 104 Ohio App.3d at 123, 661 N.E.2d at 235, this court, quoting *Cincinnati v. Phelps* (M.C.1961), 85 Ohio Law Abs. 602, 604, 175 N.E.2d 778, 780, held that "the trial court 'maintains control over the suspension or revocation * * * [of a driver's license] so long as the suspension or revocation is in effect.'" Appellee contends that this language supports his current position. However, the *Szefcyk* opinion explicitly stated, in the sentence immediately preceding the above-quoted language, that the issue of whether the trial court had jurisdiction to consider a motion, made after the execution of the appellant's sentence, to reinstate driving privileges which had been previously suspended *was not before the court.*

That question, however, is precisely the issue here. Furthermore, *Szefcyk* concerned only suspension of driving privileges (for which, in certain circumstances, there is at least implicit statutory authority for the exercise of the trial court's discretion in determining whether a portion of the penalty may be modified, see, *e.g.,* R.C. 4507.16[G] ) rather than *permanent revocation* thereof (for which there exists no such authority). Thus, we find *Szefcyk* inapposite to this case. It does not appear, therefore, that the trial court possessed either the inherent or explicitly conferred authority to consider, much less grant, appellant's motion.

Nor can it be said that R.C. 4507.16 confers implicit authority for such action as taken by the trial court, appellee's contentions to the contrary notwithstanding. Appellee insists that the terms of that statute should be construed to support a grant of discretion to the trial court. Given the following principles regarding statutory construction, we cannot agree:

"The interpretation of a statute is the determination of what the statute means. The interpretation starts and ends with the words chosen by the legislature, but it is not limited to the words alone, because the whole context of the enactment must be considered.

"The process of interpretation requires (1) a decision about the purpose to be attributed to the statute and (2) a decision about the meaning of the legislature's words that will carry out that purpose. * * * The words must be taken in their usual, normal, or customary meaning." *State v. Cravens* (1988), 42 Ohio App.3d 69, 72, 536 N.E.2d 686, 689.

Both R.C. 2903.06(B) and 4507.16(D) mandate that the trial court "shall permanently revoke" the driver's license of an individual who commits aggravated vehicular homicide while under the influence of drugs or alcohol. Pursuant to legislative decree, words and phrases utilized in Ohio statutes are to be construed "according to the rules of grammar and common usage." R.C. 1.42. Regardless of the policy implications, plain and unambiguous language may not be ignored.

*Pike–Delta–York Local School Dist. Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 571–572.

In *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743, 746, the Ohio Supreme Court explained that "[a]bsent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand." We find nothing ambiguous about the statutory requirements at issue in this case. The Revised Code does not define "shall," "permanently," or "revoke." Therefore, the plain and ordinary meanings of those terms should be considered in evaluating their mandate. *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 422, 667 N.E.2d 1223, 1228.

The word "shall" is an imperative, indicating a mandatory directive to the subject addressed. It may be "used in laws, regulations, or directives to express what is mandatory." Webster's New Collegiate Dictionary (1981) 1056. "Permanent" is a descriptive term applicable to that which is "continuing or enduring without fundamental or marked change." *Id.* at 847. To "revoke" is "to bring or call back; to annul by recalling or taking back." *Id.* at 984.

Thus, it appears from a perusal of the plain and ordinary meanings ascribed to each of the above terms that a trial court is required, under the statute, to annul a defendant's driver's license, with the annulment to be of a continuing nature without fundamental change. There is no provision, either in the statute or embodied within the words themselves, for subsequent modification or alteration of the annulment.

We find further support for this conclusion from the construction of the statute itself. In several places, the legislature has provided that a trial court or other authority may (or, in some cases, shall) revoke an offender's driver's license. See, *e.g.,* R.C. 4507.16(A), (B), and (D)(2); R.C. 4507.167; and R.C. 4507.34. However, none of those provisions contains the word "permanently." R.C. 4507.17 provides:

"Any person whose license is suspended or revoked under sections 4507.01 to 4507.39, inclusive, of the Revised Code, is not entitled to apply for or receive a new license during the effective dates of such suspension or revocation."

R.C. 4507.08 states:

"No * * * driver's license shall be issued to any person * * * whose license has been revoked, under sections 4507.01 to 4507.39 of the Revised Code, until the expiration of one year after the license was revoked."

The statute clearly implies that, as we recognized in *Szefcyk,* "there are circumstances under which a person may apply for a new license following revocation, thus implying all revocations may not be permanent." *State v.*

*Szefcyk,* 104 Ohio App.3d at 123, 661 N.E.2d at 235, quoting *State v. White* (1987), 29 Ohio St.3d 39, 41, 29 OBR 388, 390, 505 N.E.2d 632, 634.

However, it is equally clear that, by including the modifier "permanent" into the mandatory revocation provision embodied in R.C. 2903.06 and 4507.16(D)(1), the legislature provided a distinction between the revocation imposed upon a violator of those particular statutes (which govern the commission of vehicular homicide) and that imposed pursuant to other sections of the code (which govern less serious crimes). To hold otherwise, and adopt appellee's interpretation of the statute, would be to conclude that the word "permanent" is mere surplusage, a redundant adjective carelessly incorporated into the statute.

We find no basis for such an illogical result; this court will not read ambiguity or absurdity into a clearly worded statute. A strong presumption exists against any construction which produces unreasonable or absurd consequences. R.C. 1.47(C); *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 905–906. Moreover, Ohio statutes are to be construed, where possible, to give effect to each and every word contained therein. *Dungan v. Kline* (1910), 81 Ohio St. 371, 380–382, 90 N.E. 938, 939–940; see, generally, 85 Ohio Jurisprudence 3d (1988), Statutes, Section 274. There is an obvious distinction between a simple revocation, which, as provided in the Revised Code itself, might later be altered, and a permanent revocation, for which there are no such escape clauses.

Accordingly, it becomes apparent that the trial court was without authority to consider appellee's motion in the first place, much less to restore the license that had been permanently revoked as required by law. That action was void *ab initio. Internatl. Lottery, Inc. v. Kerouac* (1995), 102 Ohio App.3d 660, 665, 657 N.E.2d 820, 823. The judgment of the trial court is hereby reversed, and the order restoring appellee's driver's license is vacated.

*Judgment reversed.*

QUILLIN, P.J., and DICKINSON, J., concur.