[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 309 
{¶ 1} Appellant, Lorain County Child Support Enforcement Agency, appeals from the decision of the Lorain County Domestic Relations Court. This court reverses.
 I {¶ 2} Anthony DeJesus ("father") and Margaret DeJesus ("mother") were divorced on December 9, 2003. Pursuant to the trial court's judgment entry for divorce, the parties entered into a Shared Parenting Plan ("SPP") with regard to their two minor children. The SPP designates the father as the residential parent and affords the mother a standard order of visitation. With regard to financial support, the SPP provides:
 The parties hereto agree that there shall be no child support order owing from the Mother to the Father due to the Mother's current unemployment situation, subject to further order of the court. Therefore, the Mother is to notify the Father immediately when she is employed and the parties shall cooperate with the Child Support Enforcement Agency to establish an equitable child support order at that time.
With regard to health insurance, the SPP states that "[w]hichever party first obtains the coverage shall be considered the primary parent." Attached thereto is an exhibit entitled "Health Insurance Exhibit." In this exhibit, the obligor is responsible for providing health insurance coverage for the children, notwithstanding the language contained in paragraph nine, page 11, regarding health insurance. The health insurance exhibit states that child support must be paid through the Child Support Enforcement Agency ("CSEA") and that direct payment of support will be considered a gift unless a payment is made to discharge an obligation other than support. The exhibit further provides that CSEA must administer child support payments on a monthly basis. The child support computation worksheet is attached to the SPP. The worksheet demonstrates *Page 310 
that, but for the deviation, the mother's monthly support obligation would total $210.18.
 {¶ 3} The following is a summary of CSEA's recitation of the remaining facts.[1] In November 2004, the father contacted CSEA with regard to a cash child support order. On January 27, 2005, the father signed a form requesting that CSEA review the issue of the mother's child support obligation. Accordingly, CSEA began the review process. CSEA sent forms to both parents requesting income information. While the father and his employer submitted this information to CSEA, the mother failed to provide any information. The forms submitted by the father's employer demonstrated that the father was employed full time and was providing health-care coverage for both children.
 {¶ 4} As a result of the information the father provided, CSEA sent letters to the mother's employer requesting income information. The income information submitted regarding the mother revealed that she had been employed during the fourth quarter of 2003 and during the first two quarters of 2004. After receiving this information, CSEA reviewed the order. CSEA determined that, pursuant to the Ohio child support guidelines, effective June 1, 2005, the mother should pay the father $140.77 per month per child. CSEA also recommended that the father continue to provide health care for the children. CSEA believed it had authority to administratively modify the order based on the language contained in the original entry for divorce and Ohio Adm. Code 5101:1-30-40.3.
 {¶ 5} CSEA sent copies of the administrative modification recommendation to both parties. The materials also contained a notice stating that each party had 14 days to request a mistake-of-fact hearing at the agency if that party disagreed with CSEA's recommendations. Neither party requested a mistake-of-fact hearing. On November 5, 2005, the modification proposal was sent to the Lorain County Domestic Relations Court for adoption. On April 18, 2006, the trial court issued an order stating that based upon this court's decision in Rieger v.Rieger, 9th Dist. No. 02CA008035, 2002-Ohio-6991,2002 WL 31828741, "no child support order exists in this matter" and that "[t]herefore, CSEA is without jurisdiction to review or modify" the original order. CSEA timely appealed from the trial court's order, raising three assignments of error for our review.
 II ASSIGNMENT OF ERROR I
The trial court erred when it determined that the holding ofRieger v. Rieger applies to the facts of this case. *Page 311 
 {¶ 6} In CSEA's first assignment of error, it contends that the trial court erred when it determined that this court's decision in Rieger applies to this matter. We agree.
 {¶ 7} We review matters involving child support under the abuse-of-discretion standard. Booth v.Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748.
 {¶ 8} The trial court, relying on this court's decision in Rieger, determined that no child support order existed in this matter. The court found that because no child support order existed, CSEA lacked jurisdiction to review or modify support.
 {¶ 9} Under Ohio law, "child support order" is defined as "any order issued by a court for the support of a child." R.C. 3119.01(C)(2). "A child support enforcement agency has the authority to review a court child support order, recalculate an obligor's child support obligation, and recommend to the trial court that the existing child support order be modified accordingly." Fields v. Fields, 9th Dist. No. 04CA0018-M, 2005-Ohio-471, 2005 WL 293609, at ¶ 9, citing R.C.3119.60 to 3119.63. R.C. 3119.76 specifies that the director of job and family services shall adopt rules pursuant to R.C. Chapter 119 establishing a procedure to determine when an existing child support order should be reviewed. The purpose of review is to determine whether it is necessary and in the best interest of the children who are the subject of the child support order to change the order.
 {¶ 10} Under Ohio Adm. Code 5101:1-30-40.3, CSEA shall generally initiate a review of the child support order every 36 months. Section C(5)(a) further provides that a party to the order may initiate an administrative review sooner than 36 months if the existing order established a minimum amount of support based on the Ohio child support guidelines as a result of the unemployment or underemployment of one of the parties if that party is no longer unemployed or underemployed.
 {¶ 11} Pursuant to Ohio law, CSEA has authority to review an existing child support order, recalculate child support, and recommend that the trial court adopt its findings. Accordingly, we must determine whether there was an existing child support order in this matter. *Page 312 
 {¶ 12} At issue in the instant case is the distinction between the absence of a child support order, commonly referred to as "no" child support order, and a "zero" child support order. We find guidance from our previous examinations of this issue. In Rodriguez v. Rodriguez
(May 2, 2001), 9th Dist. No. 00CA007699, 2001 WL 458674, this court explained that "[p]ursuant to former R.C. 3113.216, `the CSEA is authorized to conduct reviews of existing child support orders.'" Id. at *4, quoting Treadway v. Ballew (Oct. 7, 1998), 9th Dist. No. 18984, 1998 WL 696888, at *3. We held that a child support order which required zero payment of child support constituted an "existing child support order" subject to review by the CSEA. Rodriguez at *4.
 {¶ 13} We further examined this issue inFields. The appellant in Fields argued that no child support order existed and that, therefore, CSEA lacked jurisdiction to modify what it considered a zero child support order. The order at issue in Fields stated:
 It is further ordered, adjudged and decreed [that] neither party shall pay to the other any amount of child support. The parties agree and acknowledge that the arrangement may deviate from the amounts called for in the child support guidelines, but state that it is in the best interests of the minor children.
2005-Ohio-471, 2005 WL 293609, at ¶ 12.
 {¶ 14} We held that this order constituted a "zero child support order," thus vesting the CSEA with jurisdiction to review and recommend modification of that order. Id. at ¶ 14. In reaching this conclusion, we relied on evidence that a separation agreement and shared-parenting plan were incorporated into the trial court's judgment entry of divorce. Id. at ¶ 13. We also relied on the fact that a child support computation worksheet was referenced in the shared-parenting plan and was also attached to the judgment entry of divorce. Id. We found that the parties clearly "contemplated child support, calculated child support, and voluntarily deviated from the amount of child support reflected on the child support calculation worksheet." Id. at ¶ 14.
 {¶ 15} In Rieger, the mother appealed the decision of the trial court denying her motion to vacate the trial court's adoption of an administrative child support order establishing a child support obligation against her. The divorce decree at issue in Rieger ordered:
 [T]here shall be no order for the payment of child support from one party to the other provided, however, that the child's school tuition fees and reasonable extracurricular fees and charges be divided equally between the parties.
 Rieger at ¶ 2. After issuing this decree, the father requested that CSEA initiate child support proceedings. CSEA complied and determined that the mother *Page 313 
should pay child support in the amount of $406. per month. The mother appealed and a hearing was held. The trial court denied the mother's objections to CSEA's findings.
 {¶ 16} Upon review, we found that CSEA did not have authority to administratively create a child support order where no order previously existed. Id. at ¶ 12. We distinguished Rieger from Rodriguez, noting that unlike the court in Rodriguez, the Rieger
"court did not journalize an order stating that appellee and/or appellant were to pay no child support. Rather, it specifically ordered that no child support order wouldexist between the parties." (Emphasis added.)Rieger at ¶ 15.
 {¶ 17} We find the within matter distinguishable from Rieger. Unlike Rieger, the parties in this matter contemplated child support. While the SPP states that "there shall be no child support order owing from the Mother to the Father due to the Mother's current unemployment situation," the SPP expressly retained jurisdiction to modify the support obligation, stating that the obligation is "subject to further order of the court." The SPP further provided that the mother must "notify the Father immediately when she is employed and the parties shall cooperate with the Child Support Enforcement Agency to establish an equitable child support order at that time." The references to child support and CSEA in the health insurance exhibit provide further evidence of the parties' intent to reexamine the child support issue.
 {¶ 18} Our case mirrors Fields. Here, the trial court's judgment entry of divorce included a SPP. The child support computation worksheet was attached to the SPP. As in Fields, the trial court calculated child support and voluntarily deviated from the amount of support reflected on the child support calculation worksheet, issuing a zero support order. Upon its review, CSEA determined that the mother's employment situation changed and she could fulfill her obligation. Because a zero child support order existed, CSEA was vested with jurisdiction pursuant to R.C. 3119.60 to 3119.63 to review and recommend modification of that order. SeeFields at ¶ 14. Consequently, we find that the trial court abused its discretion in relying on Rieger.
CSEA's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II
The trial court erred as a matter of law by not adopting the modified child support order pursuant to R.C. 3119.65.
 {¶ 19} In its second assignment of error, CSEA contends that the trial court erred as a matter of law by not adopting the modified child support order pursuant to R.C.3119.65. We agree. *Page 314 
 {¶ 20} CSEA's argument relies upon the interpretation and application of R.C. 3119.65. It is well settled that this court's standard of review concerning questions of law is de novo. Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm, (1995), 73 Ohio St.3d 107, 108,652 N.E.2d 684; Cleveland Elec. Illum. Co. v. Pub. Util.Comm. (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889. "`[I]t is appropriate for an appellate court to substitute its judgment for that of the trial court where matters of law are involved.' Indeed, where an appellate court determines that the trial court erred as a matter of law, it may reverse and render judgment." (Citation omitted.) Petro v. N. Coast VillasLtd. (2000), 136 Ohio App.3d 93, 96, 735 N.E.2d 985, quoting State v. Today's Bookstore, Inc. (1993),86 Ohio App.3d 810, 823, 621 N.E.2d 1283.
 {¶ 21} R.C. 3119.63 provides the procedure CSEA must follow when reviewing a court child support order. R.C. 3119.63 provides that CSEA must
 (B) Give the obligor and obligee notice of the revised amount of child support, of their right to request an administrative hearing on the revised amount, of the procedures and time deadlines for requesting the hearing, and that the revised amount of child support will be submitted to the court for inclusion in a revised court child support order unless the obligor or obligee requests an administrative hearing on the proposed change within fourteen days after receipt of the notice under this division;
 (C) Give the obligor and obligee notice that if the court child support order contains a deviation granted under section 3119.23 or 3119.24 of the Revised Code or if the obligor or obligee intends to request a deviation from the child support amount to be paid under the court child support order, the obligor and obligee have a right to request a court hearing on the revised amount of child support without first requesting an administrative hearing and that the obligor or obligee, in order to exercise this right, must make the request for a court hearing no later than fourteen days after receipt of the notice;
 (D) If neither the obligor nor the obligee timely requests, pursuant to division (C) of this section, an administrative or court hearing on the revised amount of child support, submit the revised amount of child support to the court for inclusion in a revised court child support order.
Pursuant to subsection B, a party to the order has 14 days to request a hearing after receiving notice of the revised amount of support. Under subsection D, if neither party requests this hearing, CSEA must submit the revised amount of child support to the trial court for inclusion in a revised court child support order.
 {¶ 22} In CSEA's brief, it contends that it sent both parents copies of the administrative modification recommendation and notice that each party had 14 days to request a hearing if that party disagreed with CSEA's recommendations. CSEA further alleges that the mother received these documents on October 5, *Page 315 
2005. There is no evidence in the docket that either party requested a hearing on the revised amount of child support. On November 5, 2005, CSEA's modification proposal was sent to the Lorain County Domestic Relations Court for adoption.
 {¶ 23} R.C. 3119.65 vests the trial court with authority to issue a modified child support order where neither party requests a hearing on the revised amount. R.C. 3119.65
provides:
 If neither the obligor nor the obligee requests a court hearing on a revised amount of child support to be paid under a court child support order in accordance with section 3119.63 of the Revised Code, the court shall issue a revised court child support order to require the obligor to pay the revised amount of child support calculated by the child support enforcement agency.
(Emphasis added.) There is no evidence in the record that either party requested a court hearing. Yet, upon submission of the revised amount of child support to the trial court, the court denied the administrative recommendation pursuant to this court's decision in Rieger.
 {¶ 24} Under R.C. 1.42, words and phrases utilized in Ohio statutes are to be construed "according to the rules of grammar and common usage." R.C. 1.42. Plain and unambiguous language may not be ignored, regardless of the policy implications. State v. Rome (1997),118 Ohio App.3d 121, 125-126, 691 N.E.2d 1140, citing Pike-Delta-YorkLocal School Dist. Bd. of Edn. v. Fulton Cty. Budget Comm.
(1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 324 N.E.2d 566. "The general rule of statutory construction provides that * * * the word `shall' should be construed as `mandatory.'"Manning v. Manning (Mar. 6, 2002), 9th Dist. No. 01CA0063, 2002 WL 347316, at *2, quoting Dorrian v. SciotoConservancy Dist. (1971), 27 Ohio St.2d 102, 107,56 O.O.2d 58, 271 N.E.2d 834.
 {¶ 25} The statute includes mandatory language, stating that the court "shall issue a revised court child support order" if neither party requests a court hearing on the revised amount of child support. (Emphasis added.) R.C. 3119.65. The record reflects that neither party requested a court hearing. See Manning at *2 (finding that because neither party requested a court hearing pursuant to R.C. 3119.65, the trial court was required to issue a revised court child support order to require the appellee to pay the revised amount of child support calculated by CSEA). Accordingly, we find that, pursuant to R.C. 3119.65, the trial court was required to issue a revised court child support order requiring the mother to pay the revised amount of child support calculated by CSEA. CSEA's second assignment of error is sustained. *Page 316 
 ASSIGNMENT OF ERROR III
The trial court's actions militate against public policy.
 {¶ 26} In CSEA's third assignment of error, it contends that the trial court's actions violated public policy. In light of our disposition of CSEA's first two assignments of error, we decline to address this contention. See App.R. 12(A)(1)(c).
 III {¶ 27} CSEA's first and second assignments of error are sustained. We decline to address CSEA's third assignment of error. The judgment of the Lorain County Domestic Relations Court is reversed, and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
CARR, J., and WHITMORE, P.J., concur.
[1] Pursuant to App.R. 18(C), as the mother failed to timely file a brief, we accept CSEA's statement of the facts as correct. *Page 317