THE STATE OF OHIO, APPELLANT, *v.* WHITE, APPELLEE.

[Cite as State *v.* White (1987), 29 Ohio St. 3d 39.]

(No. 86-557—Decided March 25, 1987.)

*Michael Miller,* prosecuting attorney, and *Bonnie L. Maxton,* for appellant.

*James Kura,* county public defender, and *Barbara J. Slutsky,* for appellee.

MOYER, C.J. The sole issue raised by this appeal is whether R.C. 4507.16(A) authorizes a trial court, in its discretion, to permanently revoke a person's operator's license. We hold that it does.

R.C. 4507.16(A) provides:

"The trial judge of any court of record, in addition to or independent of all other penalties provided by law or by ordinance, *shall suspend for not less than thirty days nor more than three years or revoke the operator's or chauffeur's license* or permit or nonresident driving privileges of any person who is convicted of or pleads guilty to any of the following:

"* * *

"(2) Any crime punishable as a felony under the motor vehicle laws of this state or any other felony in the commission of which a motor vehicle is used * * *." (Emphasis added.)

We note first that the General Assembly's use of both "suspend" and "revoke" implies that these terms are not synonymous. A review of other sections in R.C. Chapter 4507 reveals these terms are not used interchangeably. *Pioneer* v. *Martin* (1984), 16 Ohio App. 3d 478, at 481, 16 OBR 561, at 563-564, 476 N.E. 2d 1098, at 1100-1101. Neither "suspend" nor "revoke" is defined in the Revised Code. Thus, these terms should be afforded their common, everyday meaning. See *Eastman* v. *State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E. 2d 140, paragraph five of the syllabus; *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, at 62, 4 OBR 150, at 151-152, 446 N.E. 2d 449, at 451. The term "suspend" ordinarily contemplates the temporary taking away of something. "Revocation," however, is a permanent taking without the expectation of reinstatement.

Furthermore, R.C. 4507.16(A) provides that a license suspension is explicitly limited to a minimum term of thirty days up to a maximum term of three years. No such limiting phrase, however, follows the conjunctive phrase "or revoke." It is thus apparent that the General Assembly left to the discretion of the trial judge the length of time for a license suspension under R.C. 4507.16(A) within certain parameters and further granted the trial court judge the discretion to revoke the license.

This conclusion is buttressed by a consideration of the policy manifest in the entire statute. Obviously, the General Assembly sought to prevent certain persons who unlawfully drive their vehicles from continuing to enjoy the privilege of driving. The length of the deprivation of the privilege is dependent on the severity of the offense. R.C. 4507.16(C) mandates permanent revocation for those persons convicted of aggravated vehicular

homicide or vehicular homicide. *State* v. *Smith* (1984), 16 Ohio App. 3d 114, 16 OBR 121, 474 N.E. 2d 685. It would be anomalous to require permanent revocation of operator's licenses for these two offenses, but to leave no authority to permanently revoke an operator's license where a defendant is convicted of involuntary manslaughter and is the type of lethal drunk driver from whom the General Assembly seeks to withhold driving privileges.

White contends that the distinction between suspension and revocation is that the duration of a suspension is set by the judge, whereas the duration of a revocation is one year as defined in R.C. 4507.08, which provides in part:

"No temporary instruction permit or operator's or chauffeur's license shall be issued to any person whose license, whether as operator or chauffeur, has been suspended, during the period for which the license was suspended, nor to any person whose license, whether as operator or chauffeur, has been revoked, under sections 4507.01 to 4507.39 of the Revised Code, *until the expiration of one year after the license was revoked."* (Emphasis added.)

White's contention is without merit. While there are circumstances under which a person may apply for a new license following revocation, thus implying all revocations may not be permanent, it is clear from other sections of R.C. Chapter 4507 that a revocation may last for more than one year.[1]

White also maintains that, because R.C. 4507.16(C) is the only section specifically requiring the court to impose a permanent revocation, under the doctrine of *expressio unius est exclusio alterius* other provisions of R.C. 4507.16 are mutually exclusive of such penalty. We disagree, as this argument ignores the discretion granted to the trial judge under R.C. 4507.16(A). The mandatory penalty in the case of a conviction for vehicular homicide under R.C. 4507.16(C) does not preclude a similar discretionary penalty under R.C. 4507.16(A).

White contends that, if R.C. 4507.16(A) permits a trial court to revoke an operator's license for any period, such a discretionary provision violates due process of law under both the Ohio and the United States Constitutions. This contention ignores the meaning of the term "revoke" as previously discussed. Furthermore, R.C. 4507.16(A) is merely an additional sanction which a trial court, in its discretion, may invoke. See *Co-*

---

[1] For example, R.C. 4507.163 provides the following:

"(C) No application for a motorized bicycle license or probationary motorized bicycle license shall be received from any person whose probationary motorized bicycle license has been revoked under this section until the person reaches sixteen years of age."

According to R.C. 4507.01, one can obtain a probationary motorized bicycle license at age fourteen, so that a revocation under R.C. 4507.163 can last more than one year. In addition, White's contention ignores the common, everyday meaning of the term "revoke."

lumbus v. *Tyson* (1983), 19 Ohio App. 3d 224, 19 OBR 374, 484 N.E. 2d 155. Moreover, it is clear that the defendant was afforded notice of the crimes charged by the indictment and was given a full opportunity to be heard at the plea proceedings. Imposition of the lifetime revocation under R.C. 4507.16(A)(2) in this instance does not violate due process.

Finally, White essentially maintains that the trial court was required to make a specific finding that the offender was under the influence of alcohol before imposing revocation. However, White pleaded no contest herein to both counts of the indictment, thereby admitting the facts alleged in the indictment. An election to have sentence passed under either the aggravated vehicular homicide charge or the involuntary manslaughter charge would allow the permanent revocation given the facts alleged in the indictment. We need not reach the question raised by White in view of these circumstances.

Accordingly, we find the trial court properly imposed a permanent revocation of White's operator's license, and the judgment of the court of appeals is reversed.

*Judgment reversed.*

LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

SWEENEY and WRIGHT, JJ., dissent.

SWEENEY, J., dissenting. I agree with the majority that this case involves an interpretation of the intent of the General Assembly in enacting R.C. 4507.16. Moreover, I agree with the conclusion of the majority that the terms "suspend" and "revoke" are not synonymous. However, my agreement with the majority extends no further.

The words "suspend" and "revoke" are not defined in R.C. Chapter 2903. The majority therefore concludes that such terms should be afforded a common, everyday meaning.

The "common everyday meaning" the majority ascribes to the terms, however, bears no relationship to the manner in which those terms are used in a general sense or as applied to the motor vehicle laws. Black's Law Dictionary (5 Ed. 1979) 1297 defines "suspend" as follows: "[t]o interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption. * * *" In Black's, *supra,* at 1188, "revoke" is defined in the following manner: "[t]o annul or make void by recalling or taking back; to cancel, rescind, repeal, or reverse."

Conspicuously absent from the definition of revoke is any reference to the permanence of the dispossession. Clearly, if such meaning were inherent in the use of the word there would have been no need for the legislature to employ the words "permanently revoke" in R.C. 4507.16(C).

Rather, the difference between the terms is qualitative rather than quantitative. Thus, "suspend" and "revoke" do not differ as to the duration of the divestment but relate to the nature of the deprivation. A suspension holds one's privilege in abeyance but allows for full restoration of the privilege at a later date. Revocation, conversely, ends the privilege subject to reinstatement through the affirmative act of the person whose privilege has been revoked. Consequently, with respect to driving privileges, a suspension would allow resumption of these privileges at the expiration of the suspension period. In contrast, upon the expiration of a revocation period, a driver would be required to reapply for a license and be retested in order for his driving privileges to be restored. This interpretation of the term "revoke" is further supported by reference to the unambiguous language of R.C. 4507.08 which mandates that no reissuance of an operator's license occur until the passage of one year from the date of revocation.

Assuming *arguendo* that the import ascribed to these terms by the majority constitutes their "common everyday meaning," this fact alone is not dispositive of the issue. While, in a general sense, attributing to such terms their dictionary meaning is a legitimate method by which to arrive at legislative intent, it is unjustified where such meaning conflicts with the manner in which the terms are employed in the statute. Thus, in *Heidtman* v. *Shaker Heights* (1955), 163 Ohio St. 109, 119, 56 O.O. 171, 176, 126 N.E. 2d 138, 143, it was stated:

"Where legislation is silent as to the meaning of a word contained therein, and that word has both a wide and a restricted meaning, courts, in interpreting such legislation, must give such word a meaning consistent with other provisions of the legislation and of the objective to be achieved thereby."

The majority has essentially concluded that "permanently revoke" and "revoke" are synonymous. However, a review of "other provisions" of the motor vehicle law leads to the unmistakable conclusion that the term "revocation," unless otherwise modified, does not constitute a permanent divestment of driving privileges. See R.C. 4507.08, 4507.163, 4507.34 and 4507.39.

The issue, therefore, does not involve whether a revocation period can extend beyond the duration of one year. (See opinion of majority, at fn. 1.) Rather, the inquiry concerns whether the term "revoke" without more can authorize the permanent extinguishment of the privilege to operate a motor vehicle. Clearly, reference to numerous sections of the motor vehicle law does not evidence such legislative intent.

The majority contends that R.C. 4507.16(A) differs from R.C. 4507.16(C) in that the latter provision mandates the permanent revocation of driving privileges while the former section vests in the trial court the discretion to do so. This interpretation conflicts with a plain reading of each subsection. Both R.C. 4507.16(A) and 4507.16(C) are couched in mandatory language. R.C. 4507.16(A) states that the trial judge "*shall* sus-

pend * * * or revoke the operator's or chauffeur's license * * *." (Emphasis added.) R.C. 4507.16(C) states that the trial judge *"shall* permanently revoke the operator's or chauffeur's license * * *." (Emphasis added.) Instead, the majority holds that the term "shall" in R.C. 4507.16(A) is mandatory as to the imposition of the revocation, but discretionary as to its duration. Nevertheless, the term is viewed as mandatory in all respects when employed in R.C. 4507.16(C).

This exercise by the majority in judicial legislation is not limited to the mandatory language contained in the foregoing subsection. The majority, in essence, has also amended R.C. 4507.16(C) to include violations of R.C. 2903.04 within its terms. Clearly, the General Assembly could have included R.C. 2903.04 within R.C. 4507.16(C) if such action was deemed warranted. The unmistakable language of the subsection evidences a legislative intent that permanent revocation of driving privileges should be imposed only for violation of R.C. 2903.06 or 2903.07. It is not the role of this court to supply additional language. The majority opinion states that "[i]t would be anomalous" for the General Assembly to require permanent revocation of operator's licenses for violations of R.C. 2903.06 and 2903.07 but not for violations of R.C. 2903.04. Applying this logic, it is equally anomalous that the legislature would require permanent revocation for persons convicted under the former sections but permit something less than permanent revocation with respect to those convicted under the latter section. Thus, even with the judicially created language supplied by the majority, a trial judge may decline to order permanent revocation of driving privileges for one convicted of involuntary manslaughter. Consequently, the "anomaly" is not remedied by the majority opinion. Any remedy must be provided by the legislature.

WRIGHT, J., concurs in the foregoing dissenting opinion.