OPINION
Defendant-appellant, Gregory Smith, was indicted by the Butler County Grand Jury on January 12, 1996 for one count of aggravated vehicular homicide in violation of R.C. 2903.06(A); one count of aggravated vehicular assault in violation of R.C.2303.08(A); one count of failure to obey signal lights in violation of R.C. 4511.13(C); and one count of maximum axle load in violation of R.C. 5577.04. A jury trial was conducted and appellant was found guilty on all counts. On the aggravated vehicular homicide charge appellant was sentenced to five to ten years in prison and fined $5,000; for the aggravated vehicular assault charge appellant was sentenced to one and one-half years in prison to run concurrently with the five to ten year sentence; for failure to obey a traffic signal appellant was fined $100 and for maximum axle load violation appellant was fined $144. The court revoked appellant's personal and commercial driving privileges for life.
The record reveals that on November 17, 1995 at approximately 7:20 a.m., appellant was heading north on State Route 128 into Hamilton, Ohio. He was driving a loaded dump truck that weighed approximately seventy thousand pounds, one thousand two hundred pounds over the legal limit. Appellant was headed toward the Columbia Bridge in Hamilton. At the bridge, Route 128 and New London Road intersect. Proceeding across the bridge from east to west, there are two lanes that go straight off the bridge onto New London Road. However, soon after entering New London Road, the right lane merges into the left lane.
At the time that appellant was approaching the above intersection from the south, decedent, seventeen-year-old Rodney Hingsbergen, and his front seat passenger, Patrick Byrne, were on their way to Badin High School. Rodney was stopped at a red light in the right-hand lane coming off the bridge and proceeding west toward New London Road. Immediately to the left of Rodney's vehicle, in the left through lane, was a school bus loaded with students. It was Rodney's intent to go straight and then merge to the left in front of the bus so he would not have to follow the bus once New London Road turned into one lane.
As the traffic signal turned green for Rodney and the school bus driver, the bus began to move forward through the intersection. Rodney, however, delayed and did not react to the green light immediately. The car behind Rodney, also filled with Badin High School students, honked at Rodney. Rodney then began to proceed through the intersection. As the school bus driver began to move into the intersection she looked to her left and saw appellant's dump truck heading into the intersection, notwithstanding the fact that his traffic signal was red. The bus driver was able to stop the bus approximately fifteen feet into the intersection. However, the car on her right, Rodney's car, his view to the left being blocked by the bus, proceeded into the intersection. The truck driven by appellant collided with the car driven by Rodney, killing Rodney and seriously injuring the passenger, Patrick Byrne.
At the scene of the accident, appellant was questioned by the police and stated that while he was driving he saw the light turn yellow and that he sped up to make it through the intersection. At the scene, Hamilton Police Officer John Nethers questioned appellant and administered a horizontal gaze nystagmus test to determine if appellant was under the influence of alcohol and/or drugs. Officer Nethers testified at trial that there were no indications at the scene that appellant was under the influence of alcohol and/or drugs. Officer Nethers questioned and observed appellant for approximately five minutes from a distance of two to three feet. Officer Nethers testified that he did not smell an odor of alcohol about appellant, nor did he notice anything unusual about appellant. Although there were no indications at the scene that appellant was under the influence of drugs and/or alcohol, upon the request of Officer Nethers, appellant agreed to go to the hospital for alcohol and drug testing. A urine test indicated that appellant had traces of marijuana and cocaine metabolites in his urine.
Before trial, appellant filed a motion in limine to exclude the results of the drug/alcohol test and to exclude the testimony of the Butler County coroner, who was to testify as to the effects of cocaine. Appellant's motion in limine was overruled. The state was permitted to introduce the medical records showing the presence of drugs in appellant's system at the time of the accident. The Butler County Coroner, Dr. Richard Burkhart, testified regarding the effects cocaine would have on a person. There was no evidence presented at trial that appellant was under the effects of cocaine or that the cocaine in appellant's system in any way affected his judgment or driving abilities. Appellant was not charged with being under the influence of alcohol and/or drugs at the time of the accident.
At the end of the trial, before the case was given to the jury, the state withdrew the medical records evidence containing the results of the urine test. The medical records were withdrawn because the prosecutor was "worried about the duplicity and the fact that the physical exhibit might give overemphasis to the testimony." The court agreed that the evidence was improper and ordered the medical records to be removed from evidence.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ALLOWED THE STATE TO INTRODUCE INTO EVIDENCE TESTIMONY REGARDING COCAINE IN SMITH'S SYSTEM.
Appellant argues that the trial court erred in admitting appellant's medical records which indicated that there was evidence of cocaine and marijuana in appellant's system at the time of the accident. Appellant filed a motion in limine prior to trial seeking to bar the admission of the medical records. At a hearing conducted on this motion, the court stated that it would wait to see how the evidence developed and what any drug expert would testify to before deciding whether or not to allow the evidence regarding the drug use. During trial, the state conducted a voir dire of the Butler County coroner, Dr. Richard Burkhart, to demonstrate what Dr. Burkhart's testimony would be regarding the drug test results. During the voir dire, Dr. Burkhart testified regarding the effects cocaine would have had on appellant depending on the time that the cocaine was ingested. The court subsequently overruled the motion in limine and allowed Dr. Burkhart to testify over the objection of appellant's counsel. Dr. Burkhart's testimony to the jury was similar to his testimony on voir dire. After closing arguments and before the jury instructions, the appellant again asked the court to strike all of Dr. Burkhart's testimony as being violative of Evid.R. 403(A). The court overruled the objection.
A motion in limine is a pretrial request to the trial court for a preliminary ruling on specified evidence. State v. Leslie (1984), 14 Ohio App.3d 343, 344. The purpose of the motion is to avoid the injection into trial of a potentially prejudicial matter which is irrelevant and inadmissible. Rhinehart v. Toledo Blade Co. (1985), 21 Ohio App.3d 274, 278. Trial courts have broad discretion in the admission of evidence, and unless a court has clearly abused that discretion and a defendant is materially prejudiced as a result, appellate courts are reluctant to interfere. State v. Maurer (1984), 15 Ohio St.3d 239, 265. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
After reviewing Dr. Burkhart's testimony and the medical records, we find that the trial court erred in overruling the motion in limine. The medical records and Dr. Burkhart's testimony did not go to any material element of aggravated vehicular homicide. The trial court held that this evidence went to show appellant's recklessness. However, there was no evidence that appellant's judgment or driving abilities were impaired by the cocaine in appellant's system. Appellant was not charged with being under the influence of drugs or alcohol at the time of the accident. The police officer who spoke with appellant at the scene of the accident testified that he did not notice anything unusual about appellant at the scene.
We therefore find that the trial court abused its discretion by denying the motion in limine and allowing the medical records and Dr. Burkhart's testimony into evidence. Our next inquiry must be whether appellant was materially prejudiced by the admission of the evidence. If the admission of evidence at trial is not prejudicial, it does not mandate reversal. Improperly admitted evidence is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the appellant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, syllabus.
To sustain a conviction for aggravated vehicular homicide under R.C. 2903.06, the "state must prove beyond a reasonable doubt that, (1) the defendant operated the vehicle, (2) the defendant was * * * reckless in operating the vehicle, and (3) a death was proximately caused by the defendant's recklessness." State v. Dudock (1983), 6 Ohio App.3d 64.
With respect to the first element of aggravated vehicular homicide, appellant does not deny that he operated the dump truck which collided with the car containing Rodney and Patrick. With respect to the second element, appellant contends that since he was not speeding at the time of the accident that the state did not prove that he was reckless. A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C.2901.22(C).
Appellant was traveling at least forty-two m.p.h. at the point of impact. It is unclear what the speed limit was at the intersection. Officer John Nethers, an accident investigator with the Hamilton Police Department, testified that, based on Sergeant Adams' calculations that appellant was traveling at least forty-two m.p.h., appellant was over four hundred twenty-two feet away from the intersection of Route 128 and New London Road when the northbound traffic signal turned red. At forty-two m.p.h., appellant was six hundred seventy feet from the intersection when his traffic signal turned yellow. Appellant admitted to police officers on the scene that when he saw the traffic signal turn yellow he sped up to make it through the intersection.
The evidence supports a finding that appellant evinced a heedless indifference to the safety of others by intentionally disregarding a red traffic signal at a congested intersection while driving a fully loaded dump truck. Appellant knew the traffic signal was red well before he entered the intersection. For these reasons, we find that appellant was reckless by disregarding a known risk that driving an overloaded dump truck through a red traffic signal at a congested intersection was likely to result in an accident with serious injuries. Based upon the evidence presented, the second element of aggravated vehicular homicide was satisfied.
With respect to the third element of aggravated vehicular homicide, the death must have been proximately caused by such conduct. At trial, it was stipulated that Dr. John Howard of the Hamilton County Coroner's office was qualified to give an opinion as to the cause of death of Rodney Hingsbergen. It was further stipulated that in Dr. Howard's opinion, the death of Rodney Hingsbergen was directly and proximately caused by the collision that occurred on November 17, 1995, at the intersection located at Route 128 and the Columbia Bridge in the City of Hamilton, Butler County.
Accordingly, although the trial court improperly permitted the medical records and Dr. Burkhart's testimony into evidence, we find that there was sufficient evidence in the record to sustain the jury's conviction for aggravated vehicular homicide.
Appellant alternatively argues under the first assignment of error that once the trial court allowed the medical records to be withdrawn from evidence by the state, that the trial court should have stricken the testimony of Dr. Burkhart based on Evid.R. 703. Evid.R. 703 requires an expert's testimony to be based on personal knowledge or on evidence admitted at trial. Appellant asserts that without the medical records in evidence there should have not been any evidence admitted at trial regarding appellant's drug use.
We agree that after the medical records were withdrawn from evidence, the testimony of Dr. Burkhart should also have been stricken. However, we hold that the failure to strike Dr. Burkhart's testimony constitutes harmless error. Improperly admitted evidence is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the appellant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, syllabus.
Appellant argues that the jury would have been less likely to convict him of aggravated vehicular homicide without Dr. Burkhart's testimony. Apparently, the assistant prosecutor who tried this case had second thoughts about such evidence, as demonstrated by his withdrawal of the hospital report. The jury instructions concerning this evidence were limited to the following:
 Evidence has been introduced as to drugs being used by the defendant. This is a factor to be considered and weighed or not considered and weighed. It is not evidence that the defendant was legally impaired or driving under the influence.
The jury instruction suggests that the trial court also had second thoughts about this evidence, as there is nothing in the quoted language that informs the jury as to what they are to do with such evidence.
Based upon the record, we find that the trial court's error permitting Dr. Burkhart's testimony to remain in evidence was harmless beyond a reasonable doubt. The remaining evidence constitutes overwhelming proof that appellant was guilty of aggravated vehicular homicide. Even without the hospital report and Dr. Burkhart's testimony, the jury's verdict would have been the same. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REVOKED HIS DRIVER'S LICENSE.
Appellant argues that because he was not convicted of driving under the influence of drugs and/or alcohol, the trial court erred in revoking his personal and commercial drivers licenses under R.C. 2903.06(B). However, R.C. 2903.06 is not the only statute which authorizes a trial court to permanently revoke a driver's license. R.C. 4507.16(A)(2) gives the trial court the discretion to revoke the license of any person who is convicted of or pleads guilty to any crime which is punishable as a felony under the motor vehicle laws of this state or any other felony in the commission of which a motor vehicle is used. State v. White (1987), 29 Ohio St.3d 39, syllabus.
The court, at sentencing, ordered that "pursuant to R.C.2903.06 and R.C. 4507.16, * * * the defendant's operator's license or any other driving privileges shall be revoked." Under the facts of this case, we find that the trial court did not abuse its discretion by revoking appellant's personal and commercial driver's licenses for life after he was found guilty of aggravated vehicular homicide. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., concurs.
KOEHLER, J., dissents.
[1] Dr. Burkhart did not have personal knowledge of appellant or appellant's propensity to be influenced by cocaine or marijuana as appellant was never examined or interviewed by Dr. Burkhart.
[2] Sergeant John Adams, an accident reconstruction expert with the Ohio State Patrol, testified that he determined the minimum speed appellant was traveling by calculating the coefficient of friction for the road and the measurements of the skid marks that were left by the truck. Sergeant Adams then used a formula to determine that appellant was traveling at least forty-two m.p.h. at the point of impact.
[3] Sergeant Adams testified that during his investigation of the accident, he noted that the speed limit dropped from fifty-five m.p.h. to fifty m.p.h. The first speed limit sign that posted a fifty m.p.h. zone is located eight-tenths of a mile south of the intersection. Sergeant Adams testified that one-tenth of a mile south of the intersection a sign is posted "End 50 Mile Speed." However, there are no other speed limit signs posted south of the intersection. Officer John Nethers, an accident investigator with the Hamilton Police Department, testified that the speed at the intersection is thirty-five m.p.h. When asked at the scene, appellant stated that he was traveling thirty-five m.p.h.