On June 20, 1990, relator-appellee, Ellen Woods aka Ellen Fink, was adjudged guilty of aggravated vehicular homicide, driving under the influence of alcohol, and driving left of center. She was sentenced to the Ohio State Reformatory for an indeterminate term of three to ten years and, pursuant to R.C.2903.06(B) and 4507.16, the trial court permanently revoked her driving privileges. Appellee served her term of imprisonment and received her final release from parole on July 8, 1996.
Following the requirements of R.C. 2967.16(A), the Adult Parole Authority sent appellee notice of her final release which included the following language:
 [Y]our conviction of a felony precluded you from voting, serving on a jury, or holding an office of honor, trust or profit. Upon your parole, you regained your eligibility to vote. Your Final Release enables you to serve on a jury and, if not precluded by 2921.02, 2921.41, and 2921.43 or other Sections of the Revised Code, to hold a public office. The Final Release DOES NOT relieve you of any disability prohibiting you from possessing a firearm under Section 2923.13 of the Revised Code. (Emphasis sic.)
Upon her final release, appellee attempted to apply for a new operator's license and respondent-appellant, the Registrar of the Ohio Bureau of Motor Vehicles, refused the application because of the permanent revocation order. Appellee filed suit for a writ of mandamus claiming that the provisions of R.C. 2967.16(B) restored her to the rights and privileges forfeited by her convictions and that appellant has a clear legal duty to permit her to apply for driving privileges.
The statute upon which appellee relies, R.C. 2967.16(B), reads in part as follows: "A prisoner who has * * * been granted his final release by the adult parole authority shall be restored to the rights and privileges forfeited by his conviction."[1]
On cross-motions for summary judgment, the trial court ruled appellee has a clear legal right to apply for driving privileges on the basis of R.C. 2967.16(B), and if she meets all licensing requirements, to be granted an operator's license. The court also found a corresponding clear legal duty on appellant and issued a writ of mandamus in appellee's favor.
Appellant appeals assigning the following as error:
 The Court of Common Pleas erred in construing R.C. 4507.16(D)(1) with R.C. 2967.16(B) in pari materi. [Sic]
Appellant makes two arguments, the first being that the permanent revocation statute prevails over the general restoration of rights statute, and the second that the trial court failed to follow relevant statutory construction guidelines.
To determine the issues in this case, we must determine the intent of the Legislature in enacting R.C. 2967.16 and must first look to the language used in the statute. State v. S.R. (1992),63 Ohio St.3d 590, 594-595. The S.R. case involved the statute dealing with sealing records, R.C. 2953.52, and whether such procedure reached the investigatory files kept by the county department of human services or the children services board. In concluding that it did, the court said "* * * the court first looks to the language in the statute and the purpose to be accomplished." Id. at 595.
Bates v. State (1927), 27 Ohio App. 391, 398, interpreting a statute on an entirely different topic, is helpful through its identification of the following statutory construction ideas:
 Courts in construing statutes must give effect to the intent of the lawmaking body, and seek for that intent in every legitimate way. The language of a statute is its most natural expositor; and, when the language and the words therein are susceptible of a sensible interpretation, they are not to be controlled by any extraneous considerations.
With these guidelines in mind, we address the trial court's analysis of the issues raised by the provisions of R.C. 2967.16
and 4507.16.
The trial court concluded that because a privilege, the privilege of driving, was revoked as a result of a felony conviction, and because R.C. 2967.16(B) restores felons to certain enumerated privileges forfeited by their felony convictions, that to interpret the phrase "permanent revocation" as being outside the privileges restored would render R.C. 2967.16(B) meaningless. The trial court determined that instead of conflicting, R.C.2967.16(B) and 4507.16(D)(1) work in concert with each other. To put the trial court's decision another way, the statutes are in pari materia, that is, they work to effect a common purpose, to restore privileges taken away as a result of a felony conviction. However, the in pari materia rule of construction may not be used to interpret a statute in the absence of an ambiguity or doubt. State ex rel. Burrows v. Indus. Comm. (1997), 78 Ohio St.3d 78,81.
We note that R.C. 2967.16(B) speaks in terms of certain enumerated rights and privileges being "forfeited" by the conviction. We also note that R.C. 4507.16(D)(1) requires the court to "permanently revoke" driving privileges as a result of the for aggravated vehicular homicide while under the influence of alcohol. It appears that in enacting the statutes, the Legislature used different terms because it intended R.C.2967.16(B) to have no effect on a permanent revocation.[2]
"Forfeiture," for example, in the legislative scheme of driving privileges is used in R.C. 4507.168 as meaning that the forfeiture can be terminated, thereby permitting restoration of driving privileges. "Revocation" has been used in R.C.4507.16(A)(1) and (2) as allowing cancellation of the revocation and permitting restoration of driving privileges. But nowhere can we find the words "termination" or "cancellation" relating to a "permanent revocation" of driving privileges in the statutory scheme. See, also, State v. White (1987), 29 Ohio St.3d 39.
From this we conclude that the Legislature did not intend driving privileges "permanently revoked" by R.C. 4507.16(D)(1) to be considered with other privileges that have been "revoked," "terminated," "forfeited," or "cancelled" and subject to reinstatement pursuant to R.C. 2967.16(B). The term "permanent revocation" does not appear elsewhere in the statutory scheme relating to the statutes in question, and we presume that the Legislature had a reason for using this unique language. The plain meaning of the word "permanent" is "continuing or enduring without * * * change[.]" Webster's Collegiate Dictionary (10 Ed. 1996) 865. The trial court's construction effectively ignores the word "permanent." We do not believe such was the intent of the Legislature when enacting R.C. 4507.16(D)(1) and 2967.16(B).
Having determined that R.C. 2967.16(B) does not have any effect on the "permanent revocation," there is, therefore, no need to try to reconcile the two statutes in question, nor must we rule on whether they are in pari materia because they were intended to accomplish different results.
Turning now to the writ of mandamus, there are three essential elements that the relator must demonstrate to obtain a writ of mandamus: (1) that he has a clear legal right to have the requested act performed by the public officer involved, (2) that the public law officer involved has a clear legal duty to perform that act, and (3) that the relator has no other plain and adequate remedy at law for obtaining such relief. State ex rel. Westchester v. Bacon (1980), 61 Ohio St.2d 42.
We conclude, based on the foregoing discussion, that appellee has no clear legal right to apply for driving privileges and appellant has no clear legal duty to permit her to do so. Therefore, appellant's assignment of error is sustained and the judgment of the common pleas court is reversed.
POWELL, P.J., concurs.
KOEHLER, J., dissents.
[1] R.C. 2967.16 as it existed prior to the enactment of Am.Sub.S.B. No. 2 is applicable in the case at bar.
[2] When certain language is used in one statute and wholly different language in another, "it will * * * be presumed that different results were intended." Metropolitan Securities Co. v. Warren State Bank (1927), 117 Ohio St. 69, 76.