[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
On March 10, 1999, defendant-appellant Mark Walters was indicted for aggravated vehicular assault, failure to comply with the order or signal of a police officer, and felonious assault.
The evidence presented by the state at trial demonstrated that on March 1, 1999, Deputy Sheriff Augusto Orue was on routine patrol in Sycamore Township when he noticed a pickup truck driven by Walters make a particularly abrupt stop at a stop sign. Officer Orue followed Walters for a time, but observed no traffic violations that would justify him in pulling Walters over until Walters's truck suddenly veered off the road and struck twelve-year-old Joshua Kostreva, who had been riding his bicycle along the shoulder of the road. Joshua was propelled over a guardrail and down an embankment.
Walters failed to pull over after striking Joshua, and Officer Orue activated his lights and siren. Walters responded by leading Officer Orue on a chase down an interstate highway that ceased only after stop sticks were deployed to puncture the tires of Walters's truck. Upon confronting Walters, Officer Orue noted that he smelled of alcohol and had watery bloodshot eyes. He also observed opened and unopened beer cans in the cab of Walters's truck. These circumstances led Officer Orue to believe that Walters was intoxicated.
Custody of Walters was subsequently transferred to Officer Daniel Hargis. Upon observing Walters's general manner, his watery, bloodshot eyes, and the smell of alcohol on him, Officer Hargis also believed that Walters was intoxicated. This belief was furthered after Walters performed poorly on psychomotor tests that Officer Hargis administered. Furthermore, in response to questions posed by Officer Hargis, Walters indicated that he had been drinking beer all day and had had too much to drink.
In the meantime, Joshua was airlifted for treatment to Children's Hospital, where he was diagnosed as having a severed spinal cord, fractures to his hip, arm, and skull, and lacerations to his liver and kidney. As a result of the spinal-cord injury, Joshua is no longer able to walk.
In addition to the evidence of Walters's intoxication, the state introduced evidence to suggest that Walters had hit Joshua intentionally. Joshua testified that when he noticed Walters's truck approaching him, "it was as if he aimed for me." Additionally, Kelli Loop, an eyewitness to the accident, reported to police that it appeared as if Walters had deliberately hit Joshua. According to her testimony, Walters drove normally within his lane as he approached Joshua, but "[w]hen he got *** right in front of the boy, they were ready to pass each other, he swerved off the road, struck the bike and the boy."
Following a bench trial, Walters was found guilty as he stood charged. The trial court sentenced him to eight years' confinement on the merged counts of aggravated vehicular assault and felonious assault and to eighteen months' confinement for failure to comply with the order or signal of a police officer. In addition, the trial court revoked Walters's driver's license and ordered that he pay restitution to Joshua. Walters now appeals his convictions, raising four assignments of error.
In his first assignment of error, Walters raises two related issues. First, he asserts that the state failed to introduce sufficient evidence to convict him of felonious assault in violation of R.C.2903.11(A)(1).[1] Specifically, Walters contends that, although the evidence of his alleged intoxication may have been sufficient to support a finding that he acted "recklessly," it was insufficient as a matter of law to demonstrate that he "knowingly" caused serious physical harm to Joshua.
Although Walters raises an interesting legal question, given the facts of this case, we need not reach it. In addition to the evidence of Walters's intoxication, the state introduced evidence (the testimony of Joshua and eyewitness Kelli Loop) to suggest that Walters had deliberately struck Joshua with his truck. Based on this evidence alone, the trial court could reasonably have found that Walters acted "knowingly" for the purposes of R.C. 2903.11.[2] Accordingly, we reject Walters's challenge to the sufficiency of the evidence.
Walter next contends that his equal-protection rights were violated because "he was convicted of a more serious felony offense for causing serious physical harm with a car than he would have faced had the young man died in the accident." In making this argument, Walters assumes that, had Joshua died, he could only have been charged with and convicted of involuntary manslaughter, because the state proved only that he acted recklessly, not that he acted knowingly. Insofar as we have already rejected Walters's contention that the state failed to offer sufficient evidence to demonstrate that he acted knowingly, this argument lacks merit. We, therefore, reject it and overrule the first assignment of error.
We also overrule Walters's second assignment of error, which challenges the trial court's failure to conduct a hearing before ordering him to pay restitution, because there is no requirement in R.C. 2929.18 that such a hearing be held.[3]
In his third assignment of error, Walters asserts that the trial court erred in revoking his driver's license. He contends that R.C. 4507.16
only permits a trial court to suspend a driver's license for up to three years. He also contends that the trial court erred in failing to specify the length of the revocation. We disagree on both counts.
R.C. 4507.16(A)(1)(b) makes clear that, where a motor vehicle is used in the commission of a felony, the trial court has the discretion either
to suspend the offender's license for up to three years or to revoke it.[4] It is undisputed that Walters's conviction for felonious assault involved the use of his pickup truck. Consequently, the trial court acted within its discretion in revoking his license. Furthermore, the trial court's order, which included the statement "drivers license revoked," was not indefinite, as Walters suggests, because the term "revoke," as used with respect to R.C. 4507.16, is understood to mean "a permanent taking without the expectation of reinstatement."[5] The assignment of error is, therefore, overruled.
In his final assignment of error, Walters asserts that the trial court erred in admitting into evidence testimony regarding his performance on the psychomotor tests, where the tests were not administered in strict compliance with the National Highway Traffic Safety Administration's standardized testing procedures. Relying on State v. Homan,[6] wherein the Ohio Supreme Court stated that, "[w]hen field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable,"[7] Walters argues that results of his tests should not have been admitted into evidence. Accordingly, he argues, his convictions must be vacated. We disagree.
Even if we assume arguendo that Walters is correct in contending that the evidence was improperly admitted, Walters cannot demonstrate that the error materially prejudiced him.[8] Ample evidence, apart from the evidence of the psychomotor test results, was presented at trial to support a finding that Walters was intoxicated. Officer Orue testified that his observations of Walters led him to believe that he was intoxicated. Officer Hargis testified similarly based on his observations of Walters before the psychomotor tests were performed. Additionally, the state introduced evidence of statements made by Walters to Officer Hargis that he had been drinking "all day" and had "drank too much." And finally, defense counsel at trial conceded that Walters had been under the influence of alcohol. Under these circumstances, any error in the admission of the test results was harmless. Therefore, we overrule the assignment of error and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Sundermann, JJ.
[1] R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly cause serious physical harm to another or another's unborn." (Emphasis added).
[2] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus (setting forth standard of review for sufficiency of the evidence).
[3] R.C. 2929.18(E) mentions a hearing to determine an offender's ability to pay a sanction, but leaves a determination of the necessity of such a hearing to the discretion of the trial court.
[4] See State v. White (1987), 29 Ohio St.3d 39, 505 N.E.2d 632.
[5] White, supra, 29 Ohio St.3d at 40, 505 N.E.2d 634.
[6] (2000), 89 Ohio St.3d 421, 732 N.E.2d 952.
[7] Id. at 424, 732 N.E.2d at 955.
[8] See Crim.R. 52(A).