[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 173.]

THE STATE OF OHIO, APPELLEE, *v*. ANTHONY, APPELLANT.

[Cite as *State v. Anthony*, 2002-Ohio-4008.]

*Motor vehicles—Driver's license—Requirements for driver's license to be suspended or revoked pursuant to R.C. 4507.16(A)(1)(b)—R.C. 4507.16(A)(1)(b), construed.*

(Nos. 2001-1393 and 2001-1414—Submitted May 21, 2002—Decided August 21, 2002.)

APPEAL from and CERTIFIED by the Court of Appeals for Auglaize County, No. 02-2001-01, 2001-Ohio-2237.

————————————

SYLLABUS OF THE COURT

In order for a driver's license to be suspended or revoked pursuant to R.C. 4507.16(A)(1)(b), a motor vehicle must be used in the commission of a felony. To satisfy this requirement, there must be a sufficient nexus between the offense and the vehicle to indicate that the vehicle was reasonably integral to the offense. (R.C. 4507.16[A][1][b], construed.)

————————————

FRANCIS E. SWEENEY, SR., J.

{¶1} According to the prosecutor's statement at the sentencing hearing, on August 25, 1998, Chief John Drake of the Cridersville Police Department stopped a black Lincoln Continental on Interstate 75 believed to be carrying three men who had robbed a bank in Allen County. When Drake made the stop, he was able to see only the driver because the other two men, including defendant-appellant, Moses B. Anthony, were hiding in the back seat of the car. Anthony emerged from the vehicle, carrying a semiautomatic handgun, and fired four shots at Drake. Drake

took cover and was unharmed. Anthony got back into the car, and a chase ensued. Anthony was subsequently arrested.

{¶2} Anthony was charged with and pleaded guilty to one count of attempted felonious assault and one count of having a weapon while under disability.[1] The trial court sentenced Anthony to seven years' imprisonment on these charges. The court also suspended Anthony's driver's license for life, pursuant to R.C. 4507.16(A)(1)(b), since it found that a motor vehicle had been used in the commission of a felony.

{¶3} The court of appeals reversed the lifetime suspension of Anthony's driver's license on the ground that it exceeded the three-year maximum suspension allowed by statute. Nevertheless, the court of appeals concluded that the trial court was warranted in revoking his driving privileges pursuant to R.C. 4507.16(A)(1)(b). The court of appeals certified its judgment to be in conflict with that of the First District Court of Appeals in *State v. Krug* (1993), 89 Ohio App.3d 595, 626 N.E.2d 984. This cause is now before this court upon our determination that a conflict exists and pursuant to the allowance of a discretionary appeal.

{¶4} At issue is the interpretation of R.C. 4507.16(A)(1)(b), which provides for suspension or revocation of driving privileges where a motor vehicle is used in the commission of a felony.[2] R.C. 4507.16 provides:

{¶5} "(A)(1) The trial judge of any court of record * * * shall suspend for not less than thirty days or more than three years or shall revoke the driver's * * * license * * * of any person who is convicted of or pleads guilty to any of the following:

---

1. Anthony and his accomplices were convicted on federal charges for the Allen County bank robbery.
2. The certified question for our review asks: "Is the statute, R.C. 4507.16(A), authorizing suspension of a driver's license for felony in commission of which a motor vehicle is used, reserved to those situations in which the motor vehicle is used either as a weapon or to transport contraband, or is the subject of the crime charged?" Since we believe the certified issue is phrased in too limited terms, we decline to answer the question as written.

**{¶6}** "* * *

**{¶7}** "(b) Any crime punishable as a felony under the motor vehicle laws of this state *or any other felony in the commission of which a motor vehicle is used.*" (Emphasis added.)

**{¶8}** Appellant challenges his license revocation, arguing that he did not "use" a motor vehicle to commit the crimes of attempted felonious assault and having a weapon while under disability. Appellant maintains that the statutory language is ambiguous and urges us to construe the statute to find that a motor vehicle is used in the commission of a felony only when there is a sufficient nexus between the offense and the vehicle.

**{¶9}** In contrast, appellee argues, and the court of appeals found, that a motor vehicle is used in the commission of a felony whenever it is used as part of or in furtherance of the felony. Since Anthony used the vehicle to conceal himself from Officer Drake and as a method to escape the crime scene, the court of appeals held that license revocation was appropriate.

**{¶10}** In determining what is meant by the term "used" in connection with the phrase "in the commission of a felony" in R.C. 4507.16(A)(1)(b), we employ fundamental rules of statutory construction. The primary goal of statutory interpretation is to discern the intent of the legislature. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057. In determining intent, we first look to the language of the statute. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. Where the meaning of the statute is clear and definite, it must be applied as written. *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121. However, where the words are ambiguous and are subject to varying interpretations, further interpretation is necessary. Id.

**{¶11}** The term "used" is not defined in the statute. Therefore, it must be given its plain and ordinary meaning. *Sharp v. Union Carbide Corp.* (1988), 38

Ohio St.3d 69, 70, 525 N.E.2d 1386; R.C. 1.42. The term "use" has varying definitions, including "to put or bring into action or service; employ for or apply to a given purpose." Webster's New World College Dictionary (4th Ed.1999). When this definition is applied to license revocation or suspensions under R.C. 4507.16(A)(1)(b), the statutory language is easily susceptible of more than one interpretation. It can mean that whenever a vehicle is brought "into action or service" to commit a felony, license revocation or suspension is appropriate, as argued by appellee. Conversely, it can be construed to mean that the statute applies only when the vehicle is employed for the given purpose of committing a felony, the interpretation urged by appellant. Since the statutory language is subject to varying interpretations, we find that the language is ambiguous.

{¶12} R.C. 1.49 sets forth certain criteria that serve as guideposts for courts to follow when determining the legislative intent of an ambiguous statute. Among these criteria, courts may look at the object sought by the legislature and the consequences of a particular construction.

{¶13} In *State v. White* (1987), 29 Ohio St.3d 39, 40, 29 OBR 388, 505 N.E.2d 632, we stated that the legislative objective underlying R.C. 4507.16(A) is "to prevent certain persons who unlawfully drive their vehicles from continuing to enjoy the privilege of driving." In accordance with this purpose, we concluded that the trial court had the authority to permanently revoke White's driver's license where he committed aggravated vehicular homicide and involuntary manslaughter, both felony offenses under Ohio's motor vehicle laws. Although in *White* we did not construe that part of R.C. 4507.16(A)(1)(b) that is at issue in this case, the legislative purpose remains the same, to punish criminals for their unlawful conduct and to deter them from using a motor vehicle to commit similar crimes in the future.

{¶14} Given this legislative purpose, it makes little sense to take away the driving privileges of a defendant where the motor vehicle is not integral to the commission of the crime itself. The punishment simply does not fit the crime.

Moreover, under these circumstances, there is little deterrent value in taking the defendant's driving privileges away. This is particularly so under the facts of this case, where appellant was not even the driver, but was simply a passenger in the car.

{¶15} As to the consequences of a particular construction, the court of appeals holding gives trial courts wide latitude in revoking or suspending driver's licenses even where the motor vehicle plays little part in the commission of the felony. This broad interpretation not only undermines the legislative intent behind the statute, but it would also lead to absurd results. In the certified conflict case of *State v. Krug,* supra, the court of appeals points out the irrationality of such a holding.

{¶16} The *Krug* court determined that license suspension was inappropriate because the use of the motor vehicle was not an integral part of the crime. *State v. Krug,* 89 Ohio App.3d at 596, 626 N.E.2d 984, fn. 1. The defendant was charged with domestic violence, and his license was suspended because part of his wife's beating occurred in a motor vehicle. In reversing the license suspension, the court stated: "[T]here was no basis in the record from which the trial court could conclude that the defendant's automobile was used in the commission of domestic violence. Such a hypothesis assumes that, whenever an automobile is the means of transportation to or from a crime scene, a driver's license suspension is an option available to the sentencing judge." The *Krug* court then held that R.C. 4507.16(A) applies only to those situations in which the motor vehicle is used either as a weapon or to transport contraband or is the subject of the crime charged.

{¶17} The court in *People v. Poindexter* (1989), 210 Cal.App.3d 803, 258 Cal.Rptr. 680, in construing comparable statutory language, also recognized that the mere use of a motor vehicle is an insufficient reason to suspend or revoke a driver's license. Instead, it stated that "the Legislature must have intended the term 'used' in the commission of a felony to mean that there was a nexus between the

offense and the vehicle, not merely that a vehicle was incidental to the crime." Id. at 808, 258 Cal.Rptr. 680. The court reversed the defendant's suspension, since the crime the defendant was convicted of, grand theft, was not carried out by means of the car, nor was the car used as an instrumentality of the crime. Likewise, in *State v. Batten* (2000), 140 Wash.2d 362, 364-365, 997 P.2d 350, the court held that "the use of the motor vehicle must contribute in some reasonable degree to the commission of the felony."

{¶18} In applying R.C. 1.49, we agree with the rationale advanced by these courts and conclude that the General Assembly intended that R.C. 4507.16(A)(1)(b) apply only to those situations in which the motor vehicle is integral to the charged offense and is not used incidentally in the commission of the offense. Accordingly, we hold that in order for a driver's license to be suspended or revoked pursuant to R.C. 4507.16(A)(1)(b), a motor vehicle must be used in the commission of a felony. To satisfy this requirement, there must be a sufficient nexus between the offense and the vehicle to indicate that the vehicle was reasonably integral to the offense.

{¶19} As applied to this case, although the motor vehicle in which Anthony was riding allowed him to shield himself from Officer Drake and provided him with a means of escape, the motor vehicle itself was not integral to the commission of the crimes of felonious assault and having a weapon under disability. Anthony committed felonious assault when he left the vehicle and fired four shots at the officer. He committed the crime of having a weapon while under disability by virtue of the fact that he had prior felony drug convictions. Under these circumstances, there is an insufficient nexus between the vehicle and the charged offenses. Therefore, we conclude that R.C. 4507.16(A)(1)(b) was improperly invoked and that the court of appeals erred in upholding the revocation of Anthony's driver's license. Accordingly, we reverse the decision of the court of appeals and reinstate appellant's driver's license.

Judgment reversed.

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Edwin Pierce, Auglaize County Prosecuting Attorney, for appellee.

David H. Bodiker, Ohio Public Defender, and Alison M. Clark, Assistant Ohio Public Defender, for appellant.

_____