RICHTER, Appellant,

v.

STATE MEDICAL BOARD OF OHIO, Appellee.

</div>

[Cite as *Richter v. State Med. Bd. of Ohio,* 161 Ohio App.3d 606, 2005-Ohio-2995.]

<div align="center">

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–680.

Decided June 16, 2005.

</div>

Kevin P. Byers Co., LPA, and Kevin P. Byers, for appellant.

Jim Petro, Attorney General, and Rebecca J. Albers, Assistant Attorney General, for appellee.

McCORMAC, Judge.

{¶ 1} In July 1995, the State Medical Board of Ohio sent a notice of opportunity and hearing notifying appellant, Ronald J. Richter, M.D., that it intended to determine whether to suspend or revoke his medical license as the result of his conduct. On September 29, 1995, the board held an administrative hearing.

Appellant did not attend; however, he submitted a written affidavit, and his attorney appeared on his behalf. On February 14, 1996, the board voted to permanently revoke appellant's medical license to practice in Ohio, effective March 4, 1996. Appellant filed a notice of appeal to the common pleas court but voluntarily dismissed the appeal on June 18, 1996.

{¶ 2} On March 4, 1997, appellant wrote a letter to the board asking it to reconsider the permanent-revocation order. The board responded that its ability to reconsider the permanent-revocation order expired when appellant filed his appeal to the common pleas court. In October 1997 and February and March 1998, appellant and his counsel wrote to the board seeking an application form for a new medical license. The board declined to send the application form and to consider appellant's request for a new medical license. Appellant filed an original action in this court seeking a writ of mandamus compelling the board to release the licensure-application forms and to consider his application, but this court denied the writ. See *State ex rel. Richter v. State Med. Bd. of Ohio* (June 15, 2000), Franklin App. No. 98AP-1640.

{¶ 3} Appellant then filed a complaint for declaratory judgment seeking a declaration that the board should send and consider his application for a new license. The common pleas court denied his request. Appellant filed a notice of appeal and raises the following assignment of error:

First assignment of error: the trial court abused its discretion and erred to appellant's prejudice when it refused to render declaratory relief to appellant.

{¶ 4} By the assignment of error, appellant contends that the trial court abused its discretion by refusing to render declaratory relief to appellant. R.C. 2721.03 provides:

[A]ny person interested under a * * * written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] contract * * * may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, [or] contract * * * and obtain a declaration of rights, status, or other legal relations under it.

{¶ 5} To be entitled to declaratory relief, appellant must demonstrate that (1) a controversy within the scope of R.C. 2721.01 et seq. exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261, paragraph one of the syllabus. "A 'justiciable controversy' is a 'real' or 'actual' controversy." *Voinovich v. Ferguson* (1992), 63 Ohio St.3d 198, 217, 586 N.E.2d 1020. In *Burger,* the court quoted *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128,

131, 40 O.O.2d 129, 228 N.E.2d 320, stating that, for a real controversy to exist, it is not necessary that the plaintiffs violate the regulation as long as there is a controversy "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." The United States Supreme Court developed a two-fold test to determine whether a controversy is justiciable in character:

> [F]irst to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage.

*Toilet Goods Assn. v. Gardner* (1967), 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697.

{¶ 6} In this case, appellant seeks an application for a medical license, and the board contends that appellant has no right to a licensure application because his license was permanently revoked in 1996. Thus, a controversy exists between parties having adverse legal interests. The conflict is justiciable in nature and appropriate for judicial resolution. Appellant would suffer hardship if judicial relief were denied. Therefore, a real controversy within the scope of the Declaratory Judgment Act exists, the controversy is justiciable, and speedy relief is necessary for the preservation of appellant's rights that might otherwise be impaired or lost.

{¶ 7} The parties agreed on the facts in this case, and the issue is whether the board had the authority in 1996 to permanently revoke appellant's medical license and impose a lifetime ban from medicine. The board found that appellant had violated R.C. 4731.22(B)(5), (10), (12), (15), and (26). R.C. 4731.22 provided in 1996:

> (B) The board, pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code and by a vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
>
> * * *
>
> (5) Soliciting patients or publishing a false, fraudulent, deceptive, or misleading statement;
>
> * * *
>
> (10) Commission of an act that constitutes a felony in this state regardless of the jurisdiction in which the act was committed;
>
> * * *

(12) Commission of an act that constitutes a misdemeanor in this state regardless of the jurisdiction in which the act was committed, if the act was committed in the course of practice;

\* \* \*

(15) Violation of the conditions of limitation placed by the board upon a certificate to practice or violation of the conditions of limitation upon which a limited or temporary registration or certificate to practice is issued;

\* \* \*

(26) Impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice.

Am.H.B. No. 144, 146 Ohio Laws, Part II, 2164, 2165–2168.

{¶ 8} Appellant is not seeking a reinstatement of his medical license, but is instead seeking to apply for a new medical license. In *Bouquett v. Ohio State Med. Bd.* (1991), 74 Ohio App.3d 203, 598 N.E.2d 762, the board revoked the medical license of a physician based on his felony conviction in federal court, but there was no indication in the order that the revocation was permanent. Approximately two years later, the physician asked the board to either reconsider its decision to revoke his medical license or permit him to apply for a new license. Since "revocation" is not defined in R.C. 4731.22(B), this court found that R.C. 4731.22(B) contemplates that an application might be made for reinstatement even if a medical license has been revoked.[1]

{¶ 9} In *DeBlanco v. Ohio State Med. Bd.* (1992), 78 Ohio App.3d 194, 604 N.E.2d 212, the board revoked the medical license of a physician based upon convictions for forgery, theft, and Medicaid fraud. This court found that R.C. 4731.22 was not facially unconstitutional because it did not preclude reinstatement of the licensure of a physician whose license had been revoked; a new license could be issued. However, DeBlanco had not attempted reinstatement.

{¶ 10} In *Williams v. Ohio State Med. Bd.* (1992), 78 Ohio App.3d 743, 605 N.E.2d 1311, the appellant's medical license was revoked based upon felony convictions. This court again found that R.C. 4731.22(B) is not facially unconstitutional because it does not preclude reinstatement to the practice of medicine of a doctor whose license has been revoked.

{¶ 11} In *Roy v. Ohio State Med. Bd.* (1995), 101 Ohio App.3d 352, 655 N.E.2d 771, the appellant's medical license was permanently revoked because of two

---

1. R.C. 4731.22 was amended by Sub.H.B. No. 606, effective March 9, 1999, which granted the board the power to levy permanent adverse actions against licensee and applicants and to prohibit the physician from applying for reinstatement or a new license. See R.C. 4731.22(L).

felony convictions. This court concluded that the board has the authority pursuant to R.C. 4731.22(B) to permanently revoke a medical license although, consistent with *Bouquett* and *State v. White* (1987), 29 Ohio St.3d 39, 29 OBR 388, 505 N.E.2d 632, some revocations are subject to reinstatement and, under some circumstances, a new license may be obtained following revocation.

{¶ 12} In *White*, the Ohio Supreme Court considered similar statutory language under R.C. 4507.16(A). The court found that the General Assembly's use of both "suspend" and "revoke" implied that the terms are not synonymous. "Neither 'suspend' nor 'revoke' is defined in the Revised Code. Thus, these terms should be afforded their common, everyday meaning. * * * The term 'suspend' ordinarily contemplates the temporary taking away of something. 'Revocation,' however, is a permanent taking without the expectation of reinstatement." Id. at 40, 29 OBR 388, 505 N.E.2d 632. The court acknowledged that there are circumstances under which a person may apply for a new driver's license following revocation, implying that all revocations may not be permanent. Id. at 41, 29 OBR 388, 505 N.E.2d 632.

{¶ 13} Appellant also cites *State ex rel. Poignon v. Ohio Bd. of Pharmacy*, Franklin App. No. 03AP–178, 2004-Ohio-2709, 2004 WL 1171723, as authority that the board cannot forever bar an applicant. In *Poignon*, the relator filed an original action in this court seeking a writ of mandamus ordering respondent to process his application to be licensed as a pharmacist and to either grant his application or offer him the opportunity for a hearing. The relator had previously been licensed in Ohio as a pharmacist, and his license had been permanently revoked after proper notice and a hearing. Ohio Adm.Code 4729–9–01(E) defines "revoke" as a permanent action against the license and licensee. This court found that the pharmacy board was under no legal duty to either grant relator's application or provide him with a hearing in his attempt to regain his license, as he did not have a legal right to regain it. However, Ohio Adm.Code 4729–9–01(E) specifically provides that the pharmacy board can forever bar a person from holding a pharmacy license after revocation.

{¶ 14} In this case, the board permanently revoked appellant's medical license. In *Roy*, this court determined that the board has the authority, pursuant to R.C. 4731.22(B), to permanently revoke a medical license, although, consistent with *Bouquett* and *White*, some revocations are subject to reinstatement, and under some circumstances, a new license may be obtained following revocation. Thus, appellant is entitled to apply for a new medical license, and the board is obligated to provide, accept, and process appellant's licensure forms. Appellant's assignment of error is well taken.

{¶ 15} Appellant also argues that the board's action in refusing to provide, accept, and process his application for a new medical license will deprive him of his due process rights. Since we are reversing the decision of the trial court, however, we need not address that issue. "Courts decide constitutional issues only when absolutely necessary." *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114.

{¶ 16} For the foregoing reasons, appellant's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and case remanded.

PETREE, J., concurs.

FRENCH, J., concurs separately.

JOHN MCCORMAC, J., retired, of the Tenth Appellate District, sitting by assignment.

FRENCH, Judge, concurring.

{¶ 17} I concur in the majority opinion. However, I write separately to restate that the issue before the court is not whether the board had the authority in February 1996 to permanently revoke appellant's license. *Roy v. Ohio State Med. Bd.* (1995), 101 Ohio App.3d 352, 655 N.E.2d 771, answered that question in the affirmative. The question is whether the board has the authority to refuse to process an application for reinstatement by an applicant whose license was "permanently" revoked in February 1996. The majority opinion answers that question in the negative.

{¶ 18} R.C. 4731.22(L) currently states: "An individual subject to a permanent action taken by the board is forever thereafter ineligible to hold a certificate to practice and the board shall not accept an application for reinstatement of the certificate or for issuance of a new certificate." While that language makes abundantly clear that a permanent revocation results in permanent ineligibility to reapply, that language did not exist in February 1996 when the board "permanently" revoked appellant's license. Rather, in February 1996, R.C. 4731.22(B) provided:

The board, pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code and by a vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or

refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the [listed] reasons * * *.

Am.H.B. No. 144, 146 Ohio Laws, Part II, 2164, 2165. While *Roy* held that this language gave the board the authority to permanently revoke a license, *Roy* did not hold that permanent revocation included permanent ineligibility for reinstatement. Rather, *Roy* stated:

> * * * Although the parties have raised both the issues of reinstatement and constitutionality if no opportunity for reinstatement of a permanently revoked license exists, neither of those issues is before us in this case. The record reveals no application for reinstatement, and thus we do not address that issue.

Id., 101 Ohio App.3d at 355, 655 N.E.2d 771.

{¶ 19} Also, in *Bouquett v. Ohio State Med. Bd.* (1991), 74 Ohio App.3d 203, 598 N.E.2d 762, this court held that the board had the authority to reinstate or relicense a doctor whose license had been revoked, but it did not address whether board authority was the same following "permanent" revocation. It is worth noting that, on appeal following remand, the court in *Bouquett v. Ohio State Med. Bd.* (1997), 123 Ohio App.3d 466, 704 N.E.2d 583, reviewed and affirmed the board's refusal to reinstate the doctor whose license had been revoked, a refusal that came *after* a proposed denial, hearing, and final order.

{¶ 20} Here, the board took no action on appellant's requests for an application. This refusal to act apparently reflects the board's current policy of not processing or in any way acknowledging such a request from an applicant whose license has been permanently revoked. See *Hosseinipour v. State Med. Bd. of Ohio*, Franklin App. No. 03AP–512, 2004-Ohio-1220, 2004 WL 503941 (citing testimony on board policy not to consider any petitions for reinstatement where the board had permanently revoked a physician's certificate). That policy appears consistent with express board power to deny reapplication under R.C. 4731.22(L) and explicit administrative rules that define "permanent revocation" to include permanent ineligibility to reapply. See Ohio Adm.Code 4731–13–36(A) (effective February 28, 2004). However, R.C. 4731.22(L) did not exist in February 1996, and our record includes no such explicit administrative rules in effect at that time. Since former R.C. 4731.22(B) allowed the board to revoke a certificate only "to the extent permitted by law" and also required a board vote after an adjudication in order to refuse to register or reinstate an applicant, the board's permanent revocation in February 1996 did not include permanent ineligibility for reinstatement. Cf. *State ex rel. Mathur v. Ohio State Dental Bd.*, Franklin App. No. 04AP–764, 2005-Ohio-1538, 2005 WL 736232 (enforcing consent-agreement provision precluding reapplication for a dental license).

{¶ 21} Finally, I do not agree with appellee that allowing appellant to apply for reinstatement of his old certificate (or for a new one) means that appellant may

continually reapply. In my view, if the board were to refuse to register appellant or to reinstate appellant's certificate, under R.C. 4731.22(L), the board could "specify that its action is permanent" and thereby make appellant "forever thereafter ineligible" to reapply.

{¶ 22} For these reasons, I concur in the majority opinion.